Robert Bernard SMITH, Appellee and Cross-Appellant,

v.

UNITED STATES of America, Appellant and Cross-Appellee,

v.

WHITEHALL TERMINAL CORPORATION, Appellee.

No. 9405.

United States Court of Appeals Fourth Circuit.

Argued June 18, 1964.

Decided Aug. 24, 1964.

166

Sidney H. Kelsey, Norfolk, Va., for appellee and cross-appellant.

John W. Douglas, Asst. Atty. Gen. of United States (Claude V. Spratley, Jr., U. S. Atty., and Sherman L. Cohn and Edward Berlin, Attorneys, Department of Justice, on brief), for appellant and cross-appellee.

William B. Eley, Norfolk, Va. (Rixey & Rixey, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, Chief Judge, J. SPENCER BELL, Circuit Judge, and HEMPHILL, District Judge.

SOBELOFF, Chief Judge:

Libelant, Robert Bernard Smith, a longshoreman employed by the Whitehall Terminal Corporation, filed an action under the Suits in Admiralty Act, 46 U.S. C.A. § 741 et seq., to recover damages for personal injuries sustained while working aboard the USNS GOLDEN EAGLE, a vessel owned by the United States. A third-party complaint was thereafter brought by the United States against Whitehall for indemnity on the alternate grounds of breach of the express terms of the stevedoring contract or of the implied warranty of workmanlike service.

After a trial before the court without a jury, the United States District Court for the Eastern District of Virginia found that Smith's injuries were caused in equal degree by the unseaworthiness of the ship and by libelant's own contributory negligence. Damages were assessed at $12,326.43 but, by application of the comparative negligence

principle, the award was reduced by 50 percent. Additionally, the court denied the claim of the United States for indemnity from Whitehall.

Denial of indemnity prompted this appeal by the United States, and a cross-appeal was subsequently filed by Smith to challenge the finding of contributory negligence with the consequent reduction of his award. We shall consider Smith's cross-appeal first, and then turn to the indemnity question.

## I.

Smith reported for work aboard the GOLDEN EAGLE at eight o'clock on the morning of December 15, 1960. Once on the ship, he climbed down the forward ladder into the number 4 hold. After working there the entire day, he started to ascend from the hold, using the same ladder. The ladder in question was attached to a metal stanchion connecting the hatch coaming (at deck-level) with the floor of the lower 'tween deck, and consisted of parallel vertical rods and horizontal metal rungs. For the most part the rungs protruded from the stanchion, furnishing adequate standing room. However, at one point near the top of the ladder, there were two "recessed indentures," each of which housed a horizontal metal rung in a compartment only two inches deep. Smith had reached this position on the ladder when he fell. The District Court's description of the fall is as follows:

"At some stage of his climb a pallet or skid was sent below for the purpose of putting brooms and other items thereon preparatory to closing the hatch. When libelant saw the pallet being lowered into the square of the hatch, he stopped on the ladder and waited for it to pass him safely. He then continued his climb and, according to his contention, his right foot was in the lower recessed indenture (fourth rung from the top), his left foot was in the upper recessed indenture (third rung from the top), his right hand was on the uppermost rung attached to the hatch coaming, and his left hand was on the very top of the coaming. At this point his left hand gave way, his left foot slipped from the upper recessed indenture, and he fell to the floor of the lower 'tween deck alongside the pallet which had been sent down to the longshoremen."

Because it was uncontested that the minimum safe "toe clearance" in an indenture of the type here in question is four inches, with five inches preferred by the United States Navy, and the portion of the ladder where Smith was standing immediately prior to the accident afforded only a two-inch clearance, the District Court concluded that the vessel was unseaworthy—a conclusion not now contested. The court further concluded that Smith contributed to the accident by his own fault.

"Viewing libelant's testimony in its entirety, the preponderance of all of the evidence suggests that (1) his foot did reach one of the recessed indentures, (2) his hand slipped first and then his foot, by reason of the inadequate toe hold afforded, also slipped, (3) he was holding a rung with his right hand at the time, and (4) while his failure to exercise ordinary care for his own safety initially contributed to his precarious position on the ladder, the inadequacy of the recess [sic] indenture was likewise a contributory factor to his fall.

\* \* \* \* \* \*

"Considering the type of libelant here presented, together with his various inconsistent statements, we do not feel that the evidence as a whole points to the slipping of the hand as the *sole* cause of the fall. [Italics in original] That this factor combined with the inadequacy of the recessed indenture in bringing about the fall cannot be doubted; but libelant's failure to exercise due care for his own safety in properly grabbing the rung or top of the coaming is a matter which mitigates the damages. Of course, libelant did

not assume the risk of the unseaworthiness of the vessel as to the inadequate 'toe clearance.'

\* \* \* \* \* \*

"As the libelant knew of the condition of the recessed indenture and did not take sufficient hold of the rung or top of the coaming with his left hand, and in all probability started to climb the ladder after the pallet was in the process of being lowered into the hold, we believe that his own negligence contributed to the accident by fifty percent."

■ In testing the propriety of the District Court's resolution of the contributory negligence question we must, of course, be mindful that erroneous conclusions of law may always be set aside, while findings of fact, to be rejected on appeal, must be "clearly erroneous." Guzman v. Pichirilo, 369 U.S. 698, 702, 82 S.Ct. 1095, 8 L.Ed. 2d 205 (1962); McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20 (1954). And "[a]. finding of fact is clearly erroneous only when 'although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been committed.'" Burgess v. Farrell Lines, 335 F.2d 885, 4th Cir., 1964, quoting from McAllister v. United States, 348 U.S. at 20, 75 S.Ct. at 8. We have such a firm conviction here.

In the first place, the fact of the pallet being lowered at approximately the same time as Smith's attempted ascent is of negligible significance. A pallet measuring four feet square, suspended in a hatch opening of thirty by forty feet can in the present circumstances have no causal connection with the fall. The District Court appears to have acknowledged this by attributing some small fault to Smith because he "in all probability started to climb the ladder after the pallet was in the process of being lowered into the hold." This conclusion was reached in spite of the court's finding that libelant "stopped on the ladder and waited for it [the pallet] to pass him safely." But whether the pallet was in motion when Smith started to climb or when he was near the top of the ladder is immaterial. There is nothing to show that his fall was in any way caused by the moving object.

■ Further, the fact that "the libelant knew of the condition of the recessed indentures" does not justify a finding of contributory negligence against him, for such a finding here is tantamount to holding that Smith assumed the risk of the defective ladder. Palermo v. Luckenbach S.S. Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3 (1957); Socony Vacuum Oil Co. v. Smith, 305 U.S. 424, 432, 59 S.Ct. 262, 83 L.Ed. 265 (1939). He may·not be charged "with assumption of the risk under another name." Holley v. The Manfred Stansfield, 269 F.2d 317, 322 (4th Cir. 1959); see Bryant v. Partenreederei-Ernest Russ, 330 F.2d 185, 4th Cir., 1964. Clearly, to say that Smith was at fault for using the ladder when he knew of its deficiency does not differ in substance from invoking the doctrine of assumption of risk against him.

■ Had an alternative, safe route been available to Smith, his deliberate choice of a course known to be unsafe could possibly have indicated contributory fault,[1] but mere knowledge of the unseaworthy condition and use of the ladder in the absence of a showing that there was an alternative is not contributory negligence.[2]

---

1. Nicroli v. Den Norske Afrika-Og, 332 F. 2d 651 (2d Cir. 1964); Ballwanz v. Isthmian Lines, Inc., 319 F.2d 457 (4th Cir. 1963), cert. denied, 376 U.S. 970, 84 S.Ct. 1136, 12 L.Ed.2d 84 (1964); Ktistakis v. United Cross Navigation Co., 316 F.2d 869, (2d Cir. 1963); Scarberry v. Ohio River Co., 217 F.Supp. 189 (N.D. W.Va.1963).

2. See, e. g., Ferrigno v. Ocean Transport, Ltd., 201 F.Supp. 173, 178 (S.D.N.Y. 1961), rev'd on other grounds, 309 F.2d 445 (2d Cir. 1962); Hildebrand v. United States, 134 F.Supp. 514, 517 (S.D.N.Y. 1954), affirmed, 226 F.2d 215 (2d Cir. 1955); Dixon v. United States, 120 F. Supp. 747 (S.D.N.Y.1954), modified, 219 F.2d 10 (2d Cir. 1955).

The remaining reason that the District Court gave for finding contributory negligence was Smith's "failure to exercise due care for his own safety in properly grabbing the rung or the top of the coaming" with his left hand.[3] Smith himself was uncertain whether he was holding on to a rung with both hands or his left hand was merely resting on the hatch coaming. He gave both versions in his testimony, but neither version supports a finding of contributory negligence. A slip of the hand's grip does not necessarily denote negligence and there is no basis for inferring that, but for the inadequate footing, the grip of the other hand would not have sufficed. Even assuming that the left hand slipped first, the loss of the grip of that hand would not likely have attained significance if the libelant's foot were on a step wide enough for safety. Of course, in the other alternative, if the foot slipped first, throwing libelant off balance and releasing his grip, there could not arguably be contributory negligence. As Judge Boreman said in Mason v. Mathiasen Tanker Indus., Inc., 298 F.2d 28 (4th Cir.), cert. denied, 371 U.S. 828, 83 S.Ct. 23, 9 L.Ed.2d 66 (1962):

> "No witness testified that plaintiff failed to grasp the handrail which was provided for anyone using the ladder, or that he failed, in any respect, to take proper precaution to insure his own safety. * * * Here defendant had the burden to prove by a preponderance of the evidence Mason's contributory negligence. [citation omitted] No direct evidence was introduced to meet this burden. It cannot be reasonably argued that the physical facts involved in the fall could be accepted

as evidence of Mason's failure to grasp the handrails or take other precautionary measures. *It is a matter of common experience that a person can slip on a stairway, due to extremely slippery conditions, with such force that his hands would be loosened from the rail.* No inference to the contrary could properly have been drawn by the jury from the evidence in this record. * * * *" 298 F.2d at 32. (Emphasis added.)

Like Mason, where it was contended that the "oil in his shoe soles caused him to slip while descending the steep steel stairs" and the counterargument was made that the unseaworthiness was vitiated by Mason's failure to grasp the handrail, our case involves the contention that the defective ladder was offset by Smith's failure to take a firmer handhold on the hatch coaming. The question of Mason's contributory negligence was held to have been erroneously submitted to the jury; Smith's acts, too, afford no foundation for a finding of contributory negligence.

### II.

We turn now to the claim of the United States for indemnification. In the contract the stevedore expressly undertook to indemnify the Government for injuries caused in whole or in part by the negligence of the stevedore. An exception to this broad liability—embodied in an "exculpatory clause"—precludes indemnity where an accident is caused by both the unseaworthiness of the vessel and the stevedore's negligence, and the stevedore "by the exercise of due diligence" could not have discovered the defect or "otherwise have avoided" the accident or injury.[4]

---

3. In oral argument to this court counsel for the Government stressed that Smith was wearing greasy gloves during his climb. The court made no such finding. Since the District Court makes no mention of the gloves in its opinion, we can presume that their condition played no part in the resolution of the contributory negligence question.

4. The contract between the United States and Whitehall is as follows:
"Clause 12. *Liability and Insurance.*
"a. The Contractor.
* * * * *
"(2) shall be responsible for and shall hold the Government harmless from any and all loss, damage, liability and expense for * * * bodily injury to or death

The third-party claim against Whitehall was disallowed by the District Court because "[u]nder all the facts of this case * * * [it] did not believe that the stevedore has failed to use reasonable care in loading the vessel with reasonable safety."

In support of its appeal from this ruling, the United States presents two theories: First, that the terms of the stevedoring contract entitled it to indemnity because of Whitehall's negligence, in failing to give its longshoremen warning of the unsafe condition of the ladder when it had actual knowledge of that fact, and also in failing to take "immediate corrective action" to eliminate the hazard. Second, that Whitehall's conduct was a breach of its implied warranty of workmanlike service.[5]

■ Whitehall answers that its failure to warn Smith and his fellow-longshoremen of the dangerous ladder and its failure to take remedial measures should be excused here, because the men were aware of the narrow toe clearance in the recessed indentures and could see for themselves the hazards inherent in its use. Thus, it is contended, warning was unnecessary. The District Court agreed with this argument. We cannot.

Incorporated in the stevedoring contract by reference was an agreement by

Whitehall that it would "perform all services 'in accordance with directives, publications, and standing operating procedures pertaining to safety.' * * * issued from time to time by the U.S. Army Transportation Terminal, Hampton Roads." One such "publication" was the "Manual of Regulations for Contractors Performing Services within Hampton Roads Army Terminal." It obligated the stevedore to:

"(1) Conduct an aggressive safety program.

"(2) *Supervise the inspection of premises, equipment and operations and initiate immediate corrective action when unsafe conditions * * * are noted.*

"(3) Insure that all personnel under their jurisdiction receive proper training and instruction in the following:

"(a) Responsibility for accident prevention.

"(b) Proper accident reporting procedures." (Emphasis added.)

By contract Whitehall incurred a dual obligation, both to properly instruct its employees in accident prevention and immediately to correct unsafe conditions known to it.[6] A warning of danger, without allowing the workman an alternative, might not have prevented this

---

of persons occasioned either in whole or in part by the negligence or fault of the Contractor, his officers, agents, or employees in the performance of work under this contract. The general liability and responsibility of the Contractor under this Clause are subject only to the following specific limitations.

"b. The Contractor shall not be responsible for and does not agree to hold the Government harmless from loss or damage to property or bodily injury to or death of persons:

"(1) If the unseaworthiness of the vessel or failure or defect of the gear or equipment furnished by the Government contributed jointly with the fault or negligence of the Contractor in causing such damage, injury or death, and the Contractor * * * by the exercise of due diligence, could not have discovered such unseaworthiness or defect of gear or

equipment, or through the exercise of due diligence could not otherwise have avoided such damage, injury or death."

5. Because the District Court found Smith contributorily negligent, the United States also urged that the conduct of this employee of Whitehall rendered it liable for indemnity under the contract. See Shenker v. American Stevedores, Inc., 322 F.2d 622 (2d Cir. 1963), cert. denied, 376 U.S. 907, 84 S.Ct. 659, 11 L.Ed.2d 606 (1964); Santomarco v. United States, 277 F.2d 255 (2d Cir.), cert. denied sub nom., American Stevedores, Inc. v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960). But we do not consider this point, having exonerated Smith of any contributory fault.

6. Regulations issued pursuant to the Longshoremen's and Harbor Workers'

mishap; but substitution of a safe, alternative route certainly would have. None of several possible measures—a Jacob's ladder, clearing the escape hatch, or temporarily improving the faulty ladder—was undertaken. Courts have not been disposed to turn aside claims for indemnity when the stevedore has had actual notice of a dangerous condition and has failed to take any step to remedy it. See, e. g., Cia Maritima del Nervion v. Flanagan Shipping Corp., 308 F.2d 120, 124 (5th Cir. 1962); Smith v. Jugosalvenska Linijska Plovidea, 278 F. 2d 176, 180 (4th Cir. 1960). Compare Orlando v. Prudential S.S. Corp., 313 F.2d 822 (2d Cir. 1963). We cannot sanction holding the stevedore faultless and denying the longshoreman his remedy, when the stevedore does nothing to avoid a known danger and the longshoreman is given no practical choice but to work under dangerous conditions.

█ █ The fact that Whitehall's representatives examined the ladder, and felt it reasonably safe for use, cannot excuse failure to discharge contractual obligations. The duty that a stevedore assumes as an expert is not to be determined by subjective considerations. The stevedore may think the ship safe and seaworthy, but this is no defense if in fact it was unsafe and unseaworthy according to applicable standards. Ignoring naval specifications cannot be justified simply because they had been ignored in the past without harmful consequence.

In actual fact the vessel was unseaworthy, as the District Court found. This finding is not challenged on appeal.

█ That the longshoremen also knew of the dangerous condition does not relieve the stevedore of his contractual obligation to instruct and warn them, to enforce the warnings, and to abate the hazard by any practical means. E. g., Santomarco v. United States, 277 F.2d

255 (2d Cir.), cert. denied, American Stevedores v. United States, 364 U.S. 823, 81 S.Ct. 59, 5 L.Ed.2d 52 (1960); A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227 (2d Cir.), cert. dismissed, 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49 (1958). Compare United States v. Harrison, 245 F.2d 911 (9th Cir. 1957). If the longshoremen's knowledge could excuse the stevedore's default, the burden imposed upon the stevedore by contract would be transferred to the employees. The contractual duty is the stevedore's, not the longshoremen's.

█ On first impression it may seem inequitable to allow the shipowner to recover indemnity for damages resulting from an unseaworthy condition created by it. But the United States is entitled to its contractual rights absent a showing that it has committed a material breach of the agreement. Pettus v. Grace Line, Inc., 305 F.2d 151 (2d Cir. 1962); Calmar S.S. Corp. v. Nacirema Operating Co., 266 F.2d 79, 80 (4th Cir. 1959). Whitehall, it is true, argued that the shipowner is foreclosed from indemnity due to "conduct on its part sufficient to preclude recovery," relying on language in Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958). But the reliance is not justified by the holding of that case or by later decisions in the circuits. Under contracts such as the one now in question, it has been held that the stevedore must fully indemnify for all damages caused by his fault, even though the shipowner was also at fault. See, e. g., Shenker v. United States, 322 F.2d 622, 629 (2d Cir. 1963). These cases are consistent with Judge Soper's statement in Moore-McCormack Lines, Inc. v. Maryland Ship Ceiling Co., 311 F.2d 663 (4th Cir. 1962):

> "It will be observed that in all these cases the ship's right of indemnity was preserved, although the

Compensation Act, 29 C.F.R. § 9.25 (1963 ed.), impose further obligations to provide a "safe and accessible ladder"

and, where unsafe, "prohibit its use by employees."

unseaworthiness of the ship was established, because it was also shown that the stevedoring company, having knowledge of the defective condition of the ship, carelessly made use of defective equipment or proceeded with the work under defective conditions so that its actions constituted the immediate cause of the injury." 311 F.2d at 668.

The immediate cause of Smith's harm was the default of Whitehall, not the "conduct" of the United States. Because the stevedore was negligent and failed to perform its contractual obligation to exercise "due diligence," the exculpatory clause in the contract is unavailable to it.[7]

Reversed, with directions to enter judgment for libelant for $12,326.43; and judgment for the United States on the third-party claim.

7. Since indemnity is due on the express terms of the agreement, it is unnecessary to consider the applicability of the theory of implied warranty. See D'Agosta v. Royal Netherlands S.S. Co., 301 F. 2d 105 (2d Cir. 1962).