Before ALDISERT, VAN DUSEN and WEIS, Circuit Judges.

Reargued In Banc May 11, 1978.

Before SEITZ, Chief Judge, and VAN DUSEN, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS; GARTH and HIGGINBOTHAM, Circuit Judges.

**Augustus CHAVIS, Appellant,**

v.

**FINNLINES LTD., O/Y, Appellee.**

**No. 77–1126.**

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1978.

Decided May 22, 1978.

**1074**

C. Arthur Rutter, Jr., Norfolk, Va. (John H. Klein, Breit, Rutter & Montagna, Norfolk, Va., on brief), for appellant.

John B. King, Jr., Norfolk, Va. (Charles F. Tucker, Vandeventer, Black, Meredith & Martin, Norfolk, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, RUSSELL, Circuit Judge, and HOFFMAN,* Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge.

Appellant, a longshoreman, brought suit against appellee, a shipowner, under the diversity statute, 28 U.S.C., section 1332. More specifically, plaintiff sought damages for injuries he received on February 17, 1975, during the course of his employment in loading cargo aboard the vessel FINN-SAILOR at Newport News, Virginia. He alleged negligence on the part of the shipowner under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, as amended in 1972, 33 U.S.C., section 901, *et seq.* (hereinafter referred to as the Act). On December 2, 1976, the case was tried before the Honorable John A. MacKenzie and a jury. The jury returned a verdict in favor of defendant-appellee Finnlines Ltd., O/Y (hereinafter referred to as the shipowner), and the plaintiff appealed. The only issues involve the correctness of the jury instructions. We affirm.

On February 17, 1975, the vessel FINN-SAILOR was being loaded at Newport News. Tidewater Stevedoring Corporation (hereinafter referred to as Tidewater) had been engaged by the shipowner to load the cargo aboard the vessel.

The appellant, an employee of Tidewater, was a member of a longshore gang which was sent to the number six hatch, lower hold, of the FINNSAILOR to load certain cargo. The men in the gang were working under the supervision of the hatch boss, Ralph Sessoms. Appellant and his fellow gang members had been assigned by the stevedore foreman, also an employee of Tidewater, to work in the number six hatch, and plaintiff was advised by Sessoms that a cargo of logs was to be loaded into the lower hold.

The evidence was that the logs were covered with a red clay mud, which created a smooth, slippery surface. The longshoremen commenced loading, and while there

---

* Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

was testimony to the effect that the logs were wet, the longshoremen loaded the logs in the usual manner and apparently had no particular difficulty in handling the logs. (Tr. 24) It rained throughout the day, and the logs were exposed to such weather due to the fact that the hatch was left open. (Tr. 10)

The loading of the logs was completed in the latter part of the afternoon of February 17. Thereafter, the longshoremen began to load bales of herbs. The bales were to be stowed on top of the logs. The men working in the hold, including the appellant, were told that the bales were coming in by the gangwayman, also a Tidewater employee. (Tr. 25) The header in the hatch, Isaiah Battle, made the decision to bring the bales of herbs into the hatch, and Battle testified that the gangwayman could not signal the winchman to bring in the drafts containing the bales until Battle told him to do so. (Tr. 26)

The evidence as to what transpired at this point was sharply conflicting. There was testimony from the appellant and his fellow longshoreman, Isaiah Battle, to the effect that one of the vessel's mates was in the tween deck of the number six hatch. Battle testified that he asked the mate for some plyboard to put on top of the logs. Battle further testified that this mate who, according to Battle, was wearing a uniform and cap, told him there was no plyboard available on the ship, but to load the bales directly on top of the logs. (Tr. 15–16; 29–30) Appellant's witnesses testified it was the custom and practice for Finnlines' vessels, being loaded in Newport News, to supply any plyboard that was necessary for the loading operations.

The vessel's chief officer testified that the vessel's mates do not wear uniforms and, in addition, that the vessel never stations a mate in the hatch while logs and bales of herbs are being loaded. (Tr. 87–88) Upon reviewing the vessel's log book, the chief officer noted that heavy lift cargo was being loaded in the number two hatch, and that under normal procedure all of the ves-

sel's mates would be in that hatch watching over the loading of the heavy lift. (Tr. 87) He also testified that the ship always carries plyboard. However, there was no evidence that he received any request for such.

While the appellant and several of his fellow longshoremen did testify that the vessel's mate told them there was no available plyboard on the ship, it was uncontradicted that neither the appellant nor any of the other men advised the hatch boss, Sessoms, or the stevedore foreman that they required plyboard before loading the bales of herbs. (Tr. 32, 59) It was also uncontradicted that, under normal procedure, there is plyboard available on the pier. The appellant testified that he and his fellow longshoremen knew that this plyboard was available on shore for their use. Appellant acknowledged that in the past he and his fellow workers had obtained plyboard from shore for use on various vessels. (Tr. 63–64) However, neither appellant nor any of the other longshoremen attempted to obtain the plyboard from shore.

While handling one of the bales, the appellant injured his back. However, the evidence surrounding the nature of the accident was conflicting. Appellant testified that, while he was maneuvering one of the bales, his feet slipped on the slippery logs and he fell, injuring his back. However, on the day of the accident, appellant reported to the timekeeper for Tidewater, James Davis, who prepared an accident report based upon what the appellant told him. Nowhere in the report is there any indication that a fall on wet logs caused the appellant's injury. (Tr. 100–101; Defendant's exhibit No. 2)

Furthermore, on February 18, 1975, the day after the accident, the appellant completed and signed a workmen's compensation form[1] in which he described his accident as follows:

We were loading bales of herbs weighing approximately 200 pounds on top of some logs we had already loaded. One of the bales fell down between some logs and

1. Defendant's exhibit No. 1.

had to be moved because it was in the way of the rest of them to come. I proceeded to move it when I felt something give in my lower back. (Tr. 69–70)

No mention was made of slippery conditions or the alleged fact that he had slipped on the logs and fallen, thus injuring his back.

## I

### Duty of Shipowner to Provide a Reasonably Safe Place to Work

Assuming *arguendo* that, under the stated facts, it was proper to submit the case to the jury, appellant contends that the trial court erred in its refusal to grant an instruction that the shipowner had a responsibility to provide a reasonably safe place to work. Such omission, it is argued, resulted in the jury's failing to receive a proper statement of the law.[2]

Our consideration of this issue, as well as of the balance of the issues raised,

must be guided by the principle that in considering errors in instructions, this court must look to the entire charge, and if the instructions, taken as a whole, fairly and adequately state the pertinent legal principles involved, then affirmance of the court below is required. *Nitto Shosen K.K. v. Johnson*, 350 F.2d 399 (9 Cir. 1965); *Garrett v. Campbell*, 360 F.2d 382 (5 Cir. 1966).

In order to determine whether the given charge was correct, it is necessary to evaluate the complexion of the Act as it exists in light of the 1972 amendments. In particular, section 905(b) of the Act, as amended, must be taken into consideration. The subsection provides:

(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer

2. The district court instructed the jury on the shipowner's duty of care as follows (A. 31a–33a):

One who invites—one who enters or goes onto the premises of another—in this case the ship—and I am speaking of the ship and the shipowner—one who enters upon such ship as a business visitor, at the express invitation of the shipowner, in connection with the business of the shipowner, is called in law an invitee.

The invitation to enter upon the ship extends not only to that portion of the premises which the invitee or business visitor may be expressly invited to use, but also to such parts as he is invited to enter by fair implication. That is to say, the invitation extends to all parts of the premises where the invitee, under the circumstances and conditions of his invitation, should reasonably be expected to go.

The owner of the ship who thus extended an invitation to a longshoreman to come aboard, owes to that longshoreman who comes aboard that ship the legal duty to exercise ordinary care, under the circumstances, to keep the premises in a condition reasonably safe for use by that longshoreman, in every reasonable pursuit of any purpose included within the invitation.

If there is danger attending the longshoreman's use of the premises, and such danger arises from conditions not apparent to the senses of the ordinary person, and the shipowner has actual knowledge of such condi-

tions, or if such conditions would have been known to an owner in the exercise of ordinary care under the circumstances shown by the evidence in the case, then the law imposes upon the shipowner the duty to give that longshoreman reasonable warning of such danger.

This does not mean that the shipowner is a guarantor or insurer of the safety of the premises. On the contrary, the law does not charge the shipowner with knowledge of defects which reasonable inspection would not disclose; and the shipowner is entitled to assume that the invitee will see and observe that which would be obvious through reasonably-to-be-expected use of an ordinary person's senses. So, there is no duty to give the invitee notice of an obvious danger, or a danger that would be apparent to a reasonably prudent person, exercising ordinary care under the circumstances shown by the evidence in the case.

However, in the absence of appearances that caution him, or would caution a reasonably prudent person exercising ordinary care under like circumstances, a longshoreman invited thus aboard a vessel has the right to assume, and to act upon the assumption, that the premises he is invited to enter are reasonably safe, under the then-existing circumstances, for the purpose for which the invitation is extended.

shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel. except remedies available under this chapter.

In *Anuszewski v. Dynamic Mariners Corp.*, 540 F.2d 757 (4 Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977), we held that, subsequent to the 1972 Amendments to the Act, the shipowner has no nondelegable duty to provide a longshoreman working aboard a vessel with a safe place to work. We stated:

> The legislative history clearly supports the conclusion of the district court that the 1972 Amendments eliminated the absolute and non-delegable duty of a vessel to provide longshoremen a safe place to work. 540 F.2d at 758.

We quoted with approval excerpts from the legislative history in which Congress clearly evidenced its intent to eliminate the doctrine of unseaworthiness and to place a longshoreman injured on board a vessel in the same position he would be if injured in nonmaritime employment ashore.[3]

Appellant cites the House Committee Report for the proposition that Congress provided for actions against shipowners because it recognized that it was important for vessel owners to do what they could to keep their vessels safe for the longshoremen to work aboard. The Committee Report reveals:

> Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action when it knows or should have known about a dangerous condition. *Id.* at 4704.

The above view, appellant points out, was approved in *Marant v. Farrell Lines, Inc.*, 1976 A.M.C. 504 (E.D.Pa.1976), where the trial court charged the jury that the stevedore and shipowner had concurrent responsibility for longshoring safety. The jury, by special verdict, found the stevedore and shipowner equally at fault in causing the injury.

---

**3.** The House Report provides in part:

The purpose of the amendments is to place an employee injured aboard a vessel in the same position he would be if he were injured in non-maritime employment ashore, insofar as bringing a third-party damage action is concerned, and not to endow him with a special maritime theory of liability or cause of action under whatever judicial nomenclature it may be called, such as "unseaworthiness," "non-delegable duty," or the like.

.  .  .  .  .

Under this standard as adopted by the Committee, there will, of course, be disputes as to whether the vessel was negligent in a particular case. Such issues can only be resolved through the application of accepted principles of tort law and the ordinary process of litigation—just as they are in cases involving alleged negligence by land-based third parties. The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-maritime pursuits liable under similar circumstances. H.R.Rep.No.92–1441, 92d Cong., 2d Sess. (1972), *reprinted in* 1972 *U.S.Code Cong. & Admin.News*, pp. 4703–04.

However, the Third Circuit Court of Appeals reversed. In *Marant v. Farrell Lines, Inc.*, 550 F.2d 142 (3 Cir. 1977), the court held that the portion of the jury charge which informed the jury that "the responsibility for the safety of the longshoreman lies concurrently or jointly with the longshoreman's employer and with the shipowner" was erroneous. Stated the court: "A recent decision of this court, not available to the district court at the trial of this case, substantiates Farrell's position. Accordingly, on the basis of *Brown v. Rederi*, 545 F.2d 854 (3d Cir. 1976), we will order a new trial."

In *Brown*, the court stated that "express language in the statute and the legislative reports accompanying the 1972 Amendments amply demonstrate that for reasons of policy the major responsibility for the proper and safe conduct of the work was to be borne by the stevedore." 545 F.2d at 860. In the *Marant* opinion, the Third Circuit reiterated its prior holding in *Brown* that the primary responsibility for longshoremen's safety was on the stevedore and stated:

> This was an important aspect of the legislative plan, intended to focus responsibility for longshoremen's safety on those best able to improve it, the stevedores. To say that responsibility is concurrent or joint is plainly inconsistent with the intention of the Act to place primary responsibility on the stevedore. 550 F.2d at 144.

Although the duty of providing longshoremen a safe place to work is the primary responsibility of the stevedore, it does not appear that, in all cases, the obligation is exclusively his. Confusion exists chiefly in regard to the extent of the remaining duty on the shipowner in providing a safe place to work. *George*, "The Content of the Negligence Action by Longshoremen Against Shipowners Under the 1972 Amendments to the Longshoremen and Harbor Workers Act," 2 *The Maritime Lawyer* 15, 34 (1977).

Appellant, in acknowledging that the Third Circuit Court of Appeals reversed the district court in *Marant*, nevertheless argues that since the appellate court also quoted from the House Committee Report statement which recognized the responsibility on the vessel to provide a safe place to work, the omission of the requested instruction was error. This argument is of no merit. While we recognize that such a responsibility of the shipowner could exist, on another set of facts, we are satisfied that under the facts of this case it would have been error to grant such an instruction.

The district judge instructed the jury that:

> [t]he owner of the ship . . . owes to that longshoreman who comes aboard that ship the legal duty to exercise ordinary care, under the circumstances, to keep the premises in a condition reasonably safe for use by that longshoreman, in every reasonable pursuit of any purpose included within the invitation.

■ It is well established in this circuit that any determination of negligence on the part of a shipowner under 33 U.S.C., section 905(b), must be based on negligence principles applicable to land-based third parties in nonmaritime pursuits. *Bess v. Agromar Line*, 518 F.2d 738 (4 Cir. 1975). Appellant's argument that the above instruction was defective because the term "premises" was employed rather than "place of work" is most tenuous and of no merit. We are satisfied the jury was correctly instructed that a shipowner has a duty, under the 1972 Amendments to the Act, to exercise ordinary care as opposed to a nondelegable duty to provide persons working aboard with a safe place to work.

## II

### *Section 343A of the Second Restatement of Torts (1965)*

The appellant argues that the trial judge incorrectly instructed the jury on the duty of care owed by the shipowner to the longshoreman by entirely omitting any reference to the final limiting clause of section 343A(1) of the Second Restatement of Torts (1965), which would have rendered the ship-

owner liable if it was to be anticipated that harm would result to an invitee despite the obviousness of the dangerous condition. Section 343A(1) reads:

*Known or Obvious Dangers.*

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.* (emphasis added)

Appellant reasons that the failure to include the limiting clause in the instruction rendered the charge more favorable to the defendant than the actual principle of land-based law upon which the charge was supposedly based. *Napoli v. Hellenic Lines, Ltd.*, 536 F.2d 505 (2 Cir. 1976), is heavily relied upon by the appellant.

In *Napoli*, the plaintiff longshoreman was injured when he fell from some unsecured boards resting on top of a quantity of drums which were stowed on deck. Snow had become lodged between the boards and the drums. The Second Circuit Court of Appeals stated that, "We believe that where a shipowner has notice of an obviously dangerous condition, his duty of care to longshoremen exposed to such danger should be set forth in section 343A of the Restatement of Torts." 536 F.2d at 509. That court reasoned that, "We do not think that instructions which flatly negate the duty to protect against obvious danger properly portray the present-day obligations owed by a landowner to one whom he invites upon his premises." 536 F.2d at 508.

Appellant concludes the Second Circuit accordingly reasoned in *Napoli* that when an invitee was not in a position to appreciate the risk or to avoid the danger even if aware of it, the court must consider whether the landowner, as the person best able to anticipate and prevent harm from the obvious dangers on premises under his control, should not be under some duty to take corrective action. This standard, argues appellant, as set out by the Restatement in section 343A and as applied by the Second Circuit, is reasonable and proper. It recog-

nizes that the primary responsibility for avoiding obvious dangerous conditions is not on the landowner, just as the Act recognizes that the primary responsibility for a longshoreman's safety is not on the vessel but on the stevedore; but the Restatement also recognizes that there are situations where despite the obviousness of the danger, the owner still can be liable, much as the Congress has provided that shipowners still can be liable to longshoremen for negligence. Thus, appellant argues, section 343A is a proper standard for shipowner negligence and the court should have instructed on the entire section.

While we feel that *Napoli, supra,* contains a correct exposition of law, we nevertheless are constrained to limit its applicability to its facts. In *Napoli*, there was no question that the shipowner, *which was acting as its own stevedore,* allowed the defect to be created before the longshoremen began work. However, under the facts of the present case, it appears that the stevedore created the alleged defect.

The evidence was that the logs were caked with reddish mud and were slippery. The loading took place on a rainy day. The hatch above the number six lower hold was left open, exposing the logs to rain. The entire longshoring operation was under the control of Tidewater. Appellee argues, and we agree, that there was no slippery condition in the hold prior to the time Tidewater began its operations. Rather, the slippery condition was created by the stevedore.

It must be noted that this court reviewed this very issue in a recent case, *Riddle v. Exxon Transportation Company,* 563 F.2d 1103 (4 Cir. 1977). The plaintiff in *Riddle* was a shipyard-employed welder injured in a fire and gas explosion on a vessel undergoing repair at the shipyard. It was contended that the shipowner was negligent in not insuring that the vessel was "gas-free" when the repair work commenced. A jury rendered a verdict for the defendant. There was evidence that the repair operations had passed into the complete control of the shipyard. The plaintiff appealed, alleging error, in part, with regard to the

district court's instructions dealing with the duty of a shipowner regarding open and obvious conditions on the premises. No instruction on section 343A was given. This court held that:

> [e]ven under the modern rule a vessel is not liable for "open and obvious" dangerous conditions, whether existing at time control of the vessel is relinquished. by the vessel or arising afterwards with the knowledge of the vessel, if the danger is such that the stevedore or shipyard would be expected to correct the condition in the course of discharging its responsibility for the safety of the longshoreman or shipyard worker. 563 F.2d at 1111–1112.

Illustrations of the above principle include *Anuszewski v. Dynamic Mariners Corp.*, 540 F.2d 757 (4 Cir. 1976), *cert. denied*, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545 (1977), and *Frasca v. Prudential-Grace Lines, Inc.*, 394 F.Supp. 1092, 1101 (D.Md.1975).

As one commentator has noted:

> The consistent philosophy of these decisions is that in the ordinary situation shipowners are in no position to learn of unsafe conditions or methods arising during the stevedore's operations; when shipowners do learn of such dangers, ordinarily the stevedore and his employees will have an equal or greater awareness, so that the danger can be said to be open and obvious; and that the safety of stevedoring and other such operations is the primary and usually the sole responsibility of the stevedore. *Robertson*, "Negligence Actions by Longshoremen Against Shipowners Under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act," 7 *Jour. of Maritime Law and Commerce* 447, 473.

We feel, in sum, that the proper resolution of this issue was well stated in *Riddle*:

> But, whether the statement of the District Court in the challenged instruction was erroneous for not qualifying the vessel's immunity for "open and obvious" dangers in line with the modern rule [i. e., § 343A] is irrelevant in this case and its use by the District Court would, if erroneous, be at most harmless error. This is so because plaintiff's injuries resulted solely from the negligence of the [stevedore] and its employees; and, irrespective of the language of § 343 and § 343A of the Second Restatement, a vessel is unquestionably exempt under both the letter and the intent of the 1972 Amendments from any liability for injuries resulting from the negligence of the [stevedore] and its employees. And this is so, irrespective of whether the condition resulting in plaintiff's injuries was "open and obvious" or not. Such has recently been the clear holding in four well-reasoned decisions. *Hurst v. Triad Shipping Co.*, 554 F.2d 1237 (3 Cir. 1977); *Munoz v. Flota Merchante Grancolombiana, S.A.*, 553 F.2d 837 (2 Cir. 1977); *Gay v. Ocean Transport & Trading, Ltd.*, 546 F.2d 1233 (5 Cir. 1977); and *Teofilovich v. d'Amico Mediterranean/Pacific Line*, 415 F.Supp. 732 (C.D.Cal.1976). 563 F.2d at 1112.

*See also Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331 (5 Cir. 1977).

## III

### Sections 413 and 416 of the Second Restatement of Torts (1966)

■ Appellant argues that sections 413 [4]

4. § 413. Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor.

One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Comment "a" to the section states:

a. This section states the rule as to the liability of the employer who fails to provide in

and 416[5] of the Second Restatement of Torts (1966) should have been included in the court's charge. No authority is offered by the appellant as support for this assertion. Rather, the appellant is satisfied in devoting one paragraph on his brief to this argument, noting that these sections recognize that although an independent contractor has a responsibility to use reasonable care and to prevent injuries, there are certain circumstances that arise which will result in a responsibility remaining upon the employer to see that certain risks are guarded against.

However, section 416 has been held to controvert the express statutory purpose of section 905(b) of the Act, by imposing vicarious liability on the shipowner for the negligent conduct of the stevedore or the stevedore's employees. *Brown v. Ivarans A/S*, 545 F.2d 854 (3 Cir. 1976). The decision of the Fifth Circuit Court of Appeals in *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030 (5 Cir. 1977), is most relevant on this point.

In *Hess*, the plaintiff worked for an independent contractor employed by the defendant to clean a gasoline barge. While the plaintiff was using water to flush gasoline out of the barge's piping system, an explosion occurred causing the plaintiff to suffer severe burns. The district court directed a verdict in favor of the defendant and the plaintiff appealed. The Fifth Circuit Court of Appeals affirmed the district court, holding in part that the Second Restatement of Torts, sections 411, 413, 416, 423 and 427 (1965) were not applicable, and stated:

> These sections of the Restatement, however, cannot support the plaintiff's action because he is an employee of the independent contractor, and the sections only impose liability with respect to third parties. 559 F.2d at 1033.

the contract, or in some other manner, that the contractor shall take the required precautions. As to the liability of the employer who does so provide, see § 416.

**5.** Section 416 reads:

One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a

■ The court also rejected plaintiff's contention that strict liability concepts were applicable, holding that it was the intent of Congress to eliminate such concepts. 559 F.2d at 1035. We agree with the Fifth Circuit.

## IV

### Safety and Health Regulations

■ The jury should have been allowed to evaluate the conduct of the shipowner in light of its customary practice and the relevant longshoring regulations, argues the appellant. Specifically, appellant asked the court to instruct the jury on 29 C.F.R., section 1918.91, of the Occupational Safety and Health Administration (OSHA) Regulations for Longshoring, which provides:

(a) Weather deck walking and working areas shall be kept reasonably clear of lines, bridles, dunnage and all other loose tripping or stumbling hazards.

.　　.　　.　　.　　.

(c) Slippery conditions shall be eliminated as they occur.

As authority for this proposition, appellant cites *Provenza v. American Export Lines*, 324 F.2d 660 (4 Cir. 1963), *cert. denied*, 376 U.S. 952, 84 S.Ct. 970, 11 L.Ed.2d 971 (1964). In *Provenza*, this court stated that a violation of the longshoring regulations by the stevedore, known to the shipowner, could render the shipowner liable to the injured longshoreman on a negligence theory. Thus, a violation of the applicable safety regulations could be a violation of the shipowner's duty. In *Venable v. A/S Det Forenede Dampskibsselskab*, 399 F.2d 347 (4 Cir. 1968), this court held that a longshoreman is entitled to have the regula-

peculiar risk of physical harm to others unless special precautions are taken is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

tions placed before the jury with an instruction consistent with the holding in *Provenza*.

However, *Provenza* and *Venable* are no longer good law. Both were decided before the 1972 Amendments to the Act. *Provenza* stands for no more than the fact that the vessel owner is liable only if the breach of the regulations by the stevedore creates an unseaworthy condition.[6] Since the vessel owner, subsequent to the 1972 Amendments to the Act, is no longer liable to longshoremen for unseaworthy conditions, neither *Provenza* nor *Venable* is of assistance to the appellant.

The appellant's reliance on the Fifth Circuit's decision in *Arthur v. Flota Mercante Gran Centro Americana S.A.*, 487 F.2d 561 (5 Cir. 1973) is also misplaced, since the *Arthur* case arose prior to the effective date of the 1972 Amendments to the Act. In cases arising subsequent to the amendments, the Fifth Circuit has held that the regulations apply only to "employers." *Gay v. Ocean Transport and Trading, Ltd.*, 546 F.2d 1233 (5 Cir. 1977). This conclusion was based in part on the fact that 29 C.F.R. § 1918.2[7] makes clear that the regulation only applies to employers and not vessel owners. 546 F.2d at 1239, n. 9. More recently, in *Brown v. Mitsubishi Shintaku Ginko*, 550 F.2d 331 (5 Cir. 1977), the Fifth Circuit reiterated its prior holding in *Gay v. Ocean Transport and Trading Ltd., supra*, and reasoned that the Safety and Health Regulations for Longshoring do not impose any duty on shipowners since such regulations apply only to "employers."

It manifestly appears that the district court did not err in this area.

## V

### Contributory Negligence

Appellant contends it was error for the district judge to instruct the jury concerning contributory negligence. *Mason v. Mathiasen Tanker Industries, Inc.*, 298 F.2d 28 (4 Cir. 1962), is cited as authority. In that case, this court held that where there is no contributory negligence or the defendant has introduced no direct evidence to carry his burden of proving contributory negligence by a preponderance of the evidence, it is error for the judge to instruct concerning contributory negligence, for it allows the jury to speculate that in some way plaintiff's own negligence may have caused him to fall.

Appellant alleges that the record in the present case contains no direct evidence of anything that the appellant, Chavis, failed to do or did do improperly, except that he worked in a hold loading bales of herbs "on top of wet, muddy, slippery logs."[8] The law is clear, argues appellant, that mere knowledge of a defective condition and use of it, anyway, without a showing of an alternative method, is not contributory negligence. *Smith v. United States (Whitehall Terminal Corporation)*, 336 F.2d 165 (4 Cir. 1964), is cited as authority. *Smith* involved a defective ladder. This court reasoned:

6. This court in *Provenza*, in discussing what effect the violation of the Safety and Health Regulations should have on the liability of the shipowner, stated:

Nevertheless, if the violation of the regulations by the stevedore created a dangerous condition then the law is clear that the shipowner is in turn also liable, even if he did not know of the dangerous situation created by the stevedore, *for that is the nature of the owner's duty of seaworthiness.* 324 F.2d at 665. (emphasis added)

7. § 1918.2 *Scope and Responsibility*

(a) The responsibility for compliance with the regulations of this part is placed upon "employers" as defined in § 1918.3(c).

(b) It is not the intent of the regulations of this part to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers, nor is it the intent of these regulations to relieve such owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom.

"Employer" is defined, as noted, in section 1918.3(c):

(c) The term "employer" means an employer any of whose employees are employed, in whole or in part, in longshoring operations or related employments, as defined herein within the Federal maritime jurisdiction on the navigable waters of the United States.

8. Brief of appellant at 18.

Had an alternative, safe route been available to Smith, his deliberate choice of a course known to be unsafe could possibly have indicated contributory fault, but mere knowledge of the unseaworthy condition and use of the ladder in the absence of a showing that there was an alternative is not contributory negligence. 336 F.2d at 168.

Appellant concludes that in view of the rather strict statutory requirement under 33 U.S.C., section 905(a),[9] proscribing the defense of assumption of risk, where the plaintiff has continued to work though he knew of a dangerous condition, unless the defendant shows the existence of an alternate method, there may be no consideration of contributory negligence.

■ At the outset, it must be noted that in considering whether evidence of the appellant's contributory negligence was sufficient to present a jury question, the appellee is entitled to the benefit of all inferences which the evidence supports, even though contrary inferences might reasonably be drawn. *Mays v. Pioneer Lumber Corp.*, 502 F.2d 106, 108 (4 Cir. 1974), *cert. denied*, 420 U.S. 927, 95 S.Ct. 1125, 43 L.Ed.2d 398 (1975); *Fleming v. American Export Isbrandtsen Lines, Inc.*, 451 F.2d 1329 (2 Cir. 1971); *McBride v. Loffland Bros. Co.*, 422 F.2d 363 (5 Cir. 1970).

■ We are of the opinion that when the appellee is given the benefit of all inferences, especially in a situation as here where the jury was required to choose between sharply conflicting versions of how the accident occurred, the record reveals ample credible evidence from which the jury could have found contributory fault on the part of the appellant. *Smith v. Whitehall Ter-minal Corp.* clearly is distinguishable. In that case it was undisputed that the plaintiff fell and injured himself because of a defective ladder, and it was further undisputed that there was no alternative safe route available to him.

In the present case, unlike as in *Smith*, there was credible evidence from which the jury could have concluded that there were safe alternatives available, and that appellant was contributorily negligent in the following respects: (1) in attempting to move a heavy bale (200 pounds) without requesting assistance from his fellow workers; (2) in not obtaining plyboard from shore where it was available (Tr. 63–64); (3) in not asking his foreman to obtain plyboard from shore for use as dunnage (Tr. 55, 59); and (4) in not keeping a proper lookout for his own safety while working on uneven, wet logs when he knew that the working surface was wet and uneven (Tr. 64).

Moreover, as noted earlier in this opinion, there was credible evidence from which the jury could have believed that no mate was present in the number six hatch and that, therefore, the plaintiff and his fellow longshoremen never attempted to obtain dunnage from any source. The timekeeper for the stevedoring company testified that it is normal stevedoring practice to put dunnage between logs and other cargo regardless of whether the logs are wet or dry. The failure of appellant and his fellow longshoremen to follow this normal stevedoring practice could have raised an inference of contributory negligence. (Tr. 110–111) This was especially true in view of the fact that the loading of the bales of herbs began late in the day. The jury could have concluded

9. 33 U.S.C., section 905(a) provides:
(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee.

that the longshoremen did not obtain dunnage from the vessel or ashore because they were in a hurry to complete their work before quitting time.

## VI

### Duty to Supply Dunnage

Appellant argues that the district court erred in refusing to instruct the jury that if it found the shipowner was negligent and that its agents gave improper orders to the longshoremen or stevedore, or failed to properly supply plyboard and that this negligence proximately caused the accident, then its verdict should be for the plaintiff. Because this instruction was refused, contends the appellant, the jury never was instructed that an improper order of the mate or a failure to properly supply plyboard by the vessel could be considered negligence on the part of the vessel owner.

As authority, the appellant cites *Bess v. Agromar Line*, 518 F.2d 738 (4 Cir. 1975), and avers that this court there indicated that where there is a duty on the ship to supply dunnage, failure to do so can be negligence. Appellant adds that there was sufficient testimony in the record that the jury could have found that, in Newport News, Finnline's vessels did have the duty to supply necessary plyboard for dunnage.

■ We are of the opinion that appellant has misconstrued our holding in *Bess v. Agromar Line.* In that case, we rejected the argument that the shipowner had a duty, as a matter of law, to supply dunnage. 518 F.2d at 743. Moreover, there was testimony in the present case to the effect that it was the stevedore's responsibility to decide whether dunnage was required, and it was the duty of the appellant and his fellow longshoremen to obtain dunnage from the vessel or from ashore if they felt it was required for their work. Thus, the appellant's proffered instruction which required the jury to find for the appellant if the vessel did not supply dunnage was both misleading and erroneous. The district court properly refused the instruction.

## VII

### Conclusion

■ A district judge has broad discretion in framing his charge to the jury. The court is not bound to give instructions in the form or language in which they are requested, and if the instructions given "sufficiently cover the case and are correct, the judgment will not be disturbed, whatever those may have been that were refused." 9 Wright and Miller, *Federal Practice and Procedure*, section 2552 at 627 (1971 ed.). We are of the opinion that the district court did not err in its instructions regarding the duty of care owed by the shipowner. The court's instructions, taken as a whole, accurately charged the jury as to the shipowner's duty to exercise reasonable care to keep the vessel in a condition reasonably safe for use by longshoremen working on board. In addition, the court accurately defined relevant terms such as "negligence," "proximate cause," and "ordinary care."

For these reasons, the judgment order entered by the district court is

AFFIRMED.