849 F.2d 605
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William Morris McQUAIG, Jr., Plaintiff-Appellee,
v.
Clyde WALKER, Officer; William McGhee, Officer, Defendants-Appellants,
and
Mark Moore, Officer; S. Lipscomb, Officer, Defendants.
William Morris McQUAIG, Jr., Plaintiff-Appellant,
v.
Mark MOORE, Officer, Defendant-Appellee,
and
Clyde Walker, Officer; William McGhee, Officer; S.
Lipscomb, Officer, Defendants.
 No. 87-7516.
 United States Court of Appeals, Fourth Circuit.
 Argued: Feb. 4, 1988.
Decided June 1, 1988.
 
 Tiare Bowe Smiley, Assistant Attorney General (Lacy H. Thornburg, Attorney General, on brief), for appellant.
 Judith C. Behar, for appellee.
 Before HARRISON L. WINTER, Chief Judge, and SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Correctional officers Clyde Walker and William McGhee appeal from the district court's judgment entered on a jury verdict assessing them $1 compensatory damages and $250 punitive damages in William Morris McQuaig's 42 U.S.C. Sec. 1983 action against them for using excessive force. Correctional officers Mark Moore and S. Lipscomb were found not liable in this action. McQuaig appeals from the jury's award of $1,000 in favor of Moore on Moore's counterclaim for assault and battery. We affirm both judgments.
 
 
 2
 McQuaig is an inmate at the Blanch Youth Center, a North Carolina correctional facility. Walker, McGhee, and Moore are correctional officers at the facility. Blanch Youth Center is an intensive management prison unit used to segregate dangerous and problem youth inmates who cannot function in a general youth prison population.
 
 
 3
 On February 1, 1985, McQuaig was assigned to disciplinary segregation at Blanch. Officers Walker and McGhee were supervising the exercise of inmates, which, because of inclement weather on that day, took place in the hallway of the segregation unit. All of the exercising inmates were restrained with handcuffs attached to waist chains. During the exercise period, McQuaig engaged in an elbowing fight with another prisoner. There is no dispute that Walker and McGhee used fiberglass batons to break up the altercation, that McQuaig received blows to the head, and that upon returning McQuaig to his cell the officers again struck him several times with their batons. Furthermore, it is also undisputed that McQuaig struck Officer Moore with his fist when Moore released McQuaig from his handcuffs and that Moore suffered a broken nose from the blow. Beyond these uncontroverted facts, however, the parties at trial presented different versions of the events that transpired that day.
 
 
 4
 According to McQuaig, while he and the other prisoner were attempting to elbow each other, Officers Walker and McGhee approached them, threw McQuaig to the floor, and hit him about the head, shoulders, and forehead. After a nurse sutured his minor forehead wounds, the officers returned McQuaig to his cell, and according to McQuaig, they again struck him with their batons after Officer Moore removed his hand and waist restraints in the cell doorway. McQuaig testified that after his handcuffs were removed, he attempted to stop the blows by striking out at the guards and accidentally hit Moore. Moore left, but the other officers remained and continued to strike McQuaig around the head, shoulders, arms, and groin.
 
 
 5
 According to the officers, McQuaig attacked his fellow inmate in the hallway and the two were separated. When McGhee took McQuaig by the arm to escort him back to his cell, the latter broke away swinging his elbows. At that point, Walker struck McQuaig with his baton on the forehead, causing a wound that the nurse subsequently covered with two butterfly adhesive strips. Later, at McQuaig's cell, McQuaig suddenly and without provocation struck Officer Moore in the face with his fist, while Moore was removing McQuaig's restraints. Moore was knocked unconscious by the blow, and McQuaig burst out of his cell. Walker drew his baton and struck McQuaig across the arm as the officers forced him from the hallway back into his cell. The officers then continued to strike McQuaig with their batons, but quit after McQuaig threw up his hands in surrender.
 
 
 6
 The jury found that Walker and McGhee used unnecessary force and violated McQuaig's eighth amendment right to be free of cruel and unusual punishment. It awarded McQuaig both compensatory and punitive damages. On Moore's ancillary counterclaim for assault and battery, the jury found in Moore's favor.
 
 I.
 
 7
 All parties on appeal argue that the trial court erred in instructing the jury. The officers contend that the court erroneously refused to give their proffered instruction concerning the excessive force necessary to justify a finding of an eighth amendment violation. They argue that only such excessive force as would "shock the conscience" could sustain a jury's finding against them. In instructing the jury on the elements of an eighth amendment violation, the district court stated that the jury must find the defendants "knowingly beat or used force while the plaintiff was in custody ... [and] that force was excessive and unreasonable." It also instructed them:
 
 
 8
 Not every push or shove violates the Constitution, even if in highsight [sic] it appears that the push or shove was unnecessary. Rather, in order for you to answer the first issue yes, the plaintiff must prove by the preponderance of the evidence that the amount of force used by defendants ... was unreasonable, excessive, and unjustified under the circumstances then existing.
 
 
 9
 In determining whether the amount of force used was unreasonable, excessive, and unjustified, you should consider four factors. First, you should consider the need for the application of force in order to restore discipline or control the person in custody. Second, you should consider the relationship between the need to use force and the amount of force so used. Third, you should consider the extent of injury, if any, inflicted upon the person in custody. And fourth, you should consider whether the force was applied in a good faith effort to maintain or restore discipline, or was maliciously applied for the very purpose of causing harm.
 
 
 10
 In instructing on punitive damages, the court told the jury that:
 
 
 11
 If the jury should find by the preponderance of the evidence ... that the acts or omissions of the defendant or defendants, which proximately caused actual injury or damage to the plaintiff, were maliciously or wantonly or oppressively done, then the jury may [award punitive damages].
 
 
 12
 An act is maliciously done if prompted or accompanied by ill will, spite or grudge toward the injured person individually. An act is wantonly done if done in a reckless or callous disregard of or indifference to the rights of one or more persons, including the injured person.
 
 
 13
 An act is oppressively done if done in a way or manner which injures or causes damages or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness or disability or misfortune of another person.
 
 
 14
 The Supreme Court, in its recent decision in Whitley v. Albers, 475 U.S. 312 (1986), enunciated the standard for judging the excessive force necessary to establish a violation of the eighth amendment's prohibition against cruel and unusual punishment. As a general requirement, a prisoner must allege and prove that prison officials acted wantonly and unnecessarily in the infliction of pain. Id. at 319-20. Moreover, this standard must be "applied with due regard for differences in the kind of conduct against which an Eighth Amendment objection is lodged." Id. at 320. In the present case, the defendant officers were not confronted with a riot situation such as that before the Court in Albers, and we are persuaded that the district court's instructions adequately captured the Albers standard as it applied in the circumstances of this case.[1] See id. at 320-21.
 
 
 15
 The trial court instructed the jury that for it to find for McQuaig the force used by the officers must be proved to be unjustifiable, unreasonable, and excessive. They were told to consider whether the force was applied in a good faith effort to maintain discipline or was maliciously applied for the very purpose of causing harm. The court also described wantonness in its punitive damage instructions. The jury's punitive damage verdict reflects that it found the degree of excessive force necessary to establish a violation of the eighth amendment. In summary, the trial court's instructions taken as a whole paralleled in large part Albers' teaching as to how a jury should be instructed in prison discipline cases. We do not advance the trial court's instructions as model charges nor as necessarily appropriate to a wide range of varying circumstances. We hold only that read in their totality the court's instructions adequately presented the standards on which the jury should judge the issue of excessive force in the eighth amendment context presented here.
 
 II.
 
 16
 McQuaig appeals the judgment of $1,000 against him on Moore's ancillary assault and battery claim. The sole issue McQuaig raises is whether the district court erred in refusing to grant him a self-defense instruction. McQuaig requested the court instruct the jury concerning self-defense as it is defined in the North Carolina pattern instructions:
 
 
 17
 The circumstances were such as would create in the mind of a person of ordinary firmness a reasonable belief that such action was necessary to protect himself from bodily injury or offensive physical contact, and the circumstances did create such belief in the plaintiff's mind.
 
 
 18
 The district court refused to give a self-defense instruction, finding there was not sufficient self-defense evidence to raise an issue for the jury. We agree.
 
 
 19
 We, of course, do not suggest that an inmate is powerless to defend himself against unprovoked or unlawful attacks. In judging whether the initial use of force by prison officials justifies a defensive response, however, we must view the facts in light of the general prison environment and the events surrounding the altercation. Each incident may present its own problems of factual interpretation. Here, McQuaig started a fight, the officers were required to return him to his cell, and McQuaig lashed out at them the moment McQuaig's handcuffs were removed. A trial judge "is not obliged to submit to a jury a theory of an occurrence, which is obviously not tenable, merely because there is some testimony to support it." Blackley v. Powell, 68 F.2d 457, 459 (4th Cir.1934). We agree with the district court that under the circumstances, there was insufficient evidence of self-defense to justify submitting the issue to the jury.
 
 
 20
 The judgment of the district court is, therefore, affirmed.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 As we stated in the fifth amendment due process context in Justice v. Dennis, 834 F.2d 380, 383 (4th Cir.1987) (en banc):
 "The question is not, however, whether better instructions were possible, but whether the instructions 'taken as a whole, fairly and adequately state[d] the pertinent legal principles involved.' "
 (quoting Chavis v. Finnlines Ltd. O/Y, 576 F.2d 1072 (4th Cir.1978)).