Gary W. JUSTICE, Appellant,

v.

John W. DENNIS, individually and in his official capacity as North Carolina State Highway Patrolman, Appellee.

No. 85–1431.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 8, 1986.

Decided Nov. 25, 1987.

James J. Wall (Barbara von Euler, Legal Services of the Lower Cape Fear, on brief), for appellant.

Isaac T. Avery, III, Sp. Deputy Atty. Gen., North Carolina Dept. of Justice (Lacy H. Thornburg, Atty. Gen., W. Dale Talbert,

Asst. Atty. Gen., Raleigh, N.C., on brief), for appellee.

Before WINTER, Chief Judge, and RUSSELL, WIDENER, HALL, PHILLIPS, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting en banc.

K.K. HALL, Circuit Judge:

Gary Wayne Justice, the plaintiff in a civil rights action brought pursuant to 42 U.S.C. § 1983, appeals from a judgment entered on a jury verdict in favor of the defendant, John W. Dennis. Justice also appeals the denial by the United States Magistrate of his motion for judgment notwithstanding the verdict ("JNOV"). Finding no error, we affirm.

## I.

Justice was arrested on December 19, 1982, by Trooper W.B. Rose of the North Carolina Highway Patrol, who suspected that he was driving while under the influence of alcohol. Rose transported Justice, first, to the Highway Patrol Office, where a Breathalyzer test, which revealed a high blood alcohol concentration, was administered and, subsequently, to the magistrate's office in the Onslow County Courthouse.

It is undisputed that during this time, Justice engaged in constant verbal abuse of the police officers present as well as active physical resistance. For this reason, Trooper Rose requested that Dennis, a fellow officer, accompany him from the Patrol Headquarters to the magistrate's office to provide additional assistance, if necessary.

After a brief appearance, the magistrate found probable cause for Justice's arrest and set bond at $150.00. When Rose and Dennis then attempted to move Justice to the booking area, he actively resisted, forcing Rose to push him down a hallway.

In the booking area, Justice was placed in a small unlocked visitors' room to await processing. Despite being ordered to remain in that room, Justice emerged and again confronted the officers. Although his hands were handcuffed behind his back, Justice kicked at both Rose and Dennis and spat in Dennis' face. Dennis admitted at trial that in an effort to regain control, he pushed Justice against the wall of the visitors' room. Justice later claimed that the force of this push drove his face against the wall and cracked his front teeth.[1]

Justice continued to resist when he was brought back into the booking area. Viewing the struggle, Gary Dixon, an officer at the Jacksonville, North Carolina, Police Department, handed, without request, a can of chemical mace to Trooper Dennis, who sprayed it into Justice's face. The spray ended Justice's resistance and he was placed in a holding cell without further incident. Dennis later conceded that he "could have ... probably subdued" Justice without the mace.

Justice subsequently brought a civil rights action against Dennis pursuant to 42 U.S.C. § 1983, alleging that the officer's "brutal and excessive force" had deprived him of liberty without due process of law. The parties consented to the jurisdiction of the United States magistrate pursuant to 28 U.S.C. § 636(c) and the case came to trial on March 5, 1985. The jury returned a verdict in favor of the defendant and the magistrate denied Justice's motion for JNOV. This appeal followed.

## II.

On appeal, Justice contends that the magistrate's instructions to the jury on the issue of constitutionally excessive force misstated the applicable standard and established an impermissibly high threshold for liability under section 1983. Alternatively, Justice argues that reasonable men could not differ on the question of whether the use of chemical mace on a handcuffed prisoner amounts to constitutionally excessive force. We disagree with both contentions.

---

1. There was testimony at trial by Justice's dentist which suggested that Justice's teeth, which had been damaged in an earlier accident, were particularly susceptible to further injury.

At trial, Justice proposed the following instruction as the sole standard for assessing liability:

> The Plaintiff Gary Wayne Justice claims that excessive force was used by Defendant Dennis in connection with his arrest. A person, even if he is being lawfully arrested, has a constitutional right to be free of excessive force. An officer is entitled to use such force as a reasonable person would think is required to take one into custody, and this may include such physical force as is reasonably necessary to subdue a person who is struggling with an officer. However, an officer is not allowed to use any force beyond that reasonably necessary to accomplish his lawful purpose. Thus if you find that Defendant used greater force than was reasonably necessary in the circumstances of this case, you must find that the Defendant is liable for a violation of the Plaintiff's constitutional rights.

The court declined to limit its instruction to the jury in that fashion and instead offered a lengthy instruction that included the following language:

> Members of the jury, you are instructed to use the following standard for determining the amount of force necessary to make the defendant liable.
>
> The force used by the officer is unconstitutionally excessive if the officer used a means so brutal, demeaning and harmful as literally to shock the conscience of a court.
>
> You must determine whether the force applied caused injury so severe, was so disproportionate to the need presented and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal or inhumane abuse of official power literally shocking to the conscience.

Although acknowledging that the magistrate's instruction was taken directly from this Court's opinion in *Hall v. Tawney*, 621

F.2d 607 (4th Cir.1980),[2] Justice argues that it was never expected that the formulation would be used to instruct a jury. Rather, Justice contends, the language was intended to be utilized by a trial court in deciding whether the jurisdictional requirements of a section 1983 action had been established and as a basis for ruling on motions to dismiss, for summary judgment and for a directed verdict. We are not persuaded by appellant's effort to restrict the effect of our prior decisions.

Courts, including our own, have experienced some difficulty in defining the scope of liability for excessive force as a constitutional tort under section 1983. *See Kidd v. O'Neil*, 774 F.2d 1252, 1253–54 (4th Cir. 1985). The dilemma has been complicated by the fact that claims of excessive force may arise in the context of the fourth, eighth, or as in this instance, the fifth amendment. Subtle efforts at distinction are, therefore, common in cases in this area.

 There are, nevertheless, certain basic principles in section 1983 jurisprudence as it relates to claims of excessive force that are beyond question. Whether the factual circumstances involve an arrestee, a pretrial detainee or a prisoner, it is clear that the agents of the state are permitted to exercise a certain degree of force in order to protect the interests of society. While liability may be assessed under section 1983 when the limits of privileged force are exceeded, the threshold for that liability must be higher than that set for a normal tort action. To allow otherwise would offend the Supreme Court's repeated determination that the due process clause is not intended to superimpose a "font of tort law" upon whatever systems may already be administered by the state. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 666, 88 L.Ed.2d 662, quoting *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

2. Although *Hall* involved a substantive due process challenge to corporal punishment in the public schools rather than a true excessive force claim, the standard articulated in *Hall* was subsequently applied in *King v. Blankenship*, 636 F.2d 70 (4th Cir.1980). There can be no question that *King*, which dealt with allegations of improper conduct by prison officials, was an excessive force case.

■ We accept without question Justice's basic contention that constitutionally excessive force is force that is unreasonable under the circumstances.[3] The jury's inquiry is fact-based and must consider a number of factors, including "the need for the application of the force; ... the relationship between the need for the force and the amount of force used; ... [and] the extent of injury inflicted." *Bailey v. Turner*, 736 F.2d 963, 970 (4th Cir.1984).

The inquiry must not, however, cease at that point. The jury must also determine if the state actor has exceeded the bounds of privilege. An instruction such as the one articulated in *Bailey* that directs the jury to consider whether the force "shocks the conscience" and appears to have been applied "maliciously and sadistically for the purpose of causing harm" is a rational, useful and widely-accepted method of focusing that inquiry. Whether the instruction is designated as a principal factor for consideration, as indicated in *Bailey*, or as a description of the level of conduct that overcomes the applicable privilege, as suggested in *Kidd*, makes little practical difference. Under either rationale the jury must include the formulation in its deliberations. Certainly, it strains credulity to suggest that the jury should not consider these questions when the Supreme Court has recently held that the issue of liability for excessive force in at least one context turns on those factors. *See Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986).[4]

■ We do not suggest that the instructions given at Justice's trial were ideal. They were admittedly rambling and unnecessarily repetitive. Certainly more precise and tightly structured instructions resembling those approved in *Bailey* would have been preferred. The question is not, however, whether better instructions were pos-

sible, but whether the instructions "taken as a whole, fairly and adequately state[d] the pertinent legal principles involved." *Chavis v. Finnlines Ltd. O/Y*, 576 F.2d 1072 (4th Cir.1978). We conclude that they did. To the extent that any of our previous decisions, including *Kidd*, hold to the contrary, they are expressly overruled.

### III.

■ We also reject as meritless Justice's contention that reasonable men could not differ regarding whether the use of mace on a handcuffed prisoner was constitutionally excessive force. In *Bailey*, we determined that the use of mace on an unruly prison inmate was not *per se* unconstitutional. 736 F.2d at 970. The question of liability turns upon the circumstances in which the mace was used.

In this instance, Justice, although handcuffed, was under the influence of alcohol and obviously capable of strenuous physical resistance. We do not believe that a rational jury was precluded from finding that the use of mace in these circumstances amounted to a reasonable effort to regain control over a violent and agitated arrestee.

### IV.

For the foregoing reasons, the judgment entered pursuant to the jury's verdict is affirmed.

AFFIRMED.

JAMES DICKSON PHILLIPS, Circuit Judge, dissenting:

The jury instruction imposing the "substantive due process" standard for assessing Justice's "excessive force" claim was error requiring remand for a new trial. That standard was wholly inapposite to

---

**3.** We note that the instructions given the jury in this case expressly included a statement to that effect.

**4.** Although *Whitley* dealt with an excessive force claim arising under the eighth amendment, we perceive no meaningful distinction between the scope of the jury's inquiry in that situation and in a case involving an allegation of excessive

force violating the fifth amendment rights of a pretrial detainee. In both circumstances, the jury must determine if the level of force used was so unreasonable as to exceed the privilege accorded the agents of the state who have been charged with maintaining order in penal institutions.

Justice's claim, which as pleaded and presented, was one for violation of fourth amendment rights.

## I

The critical point is precisely that Justice's § 1983 claim, properly assessed, was one invoking fourth amendment protection against unreasonable seizures of the person, rather than, as the majority has simply assumed without analysis, that of a pretrial detainee invoking only the direct protections of the fourteenth amendment against deprivations of liberty without due process. As doctrine has developed, that of course can make a great conceptual and practical difference.

If the claim was solely one of a deprivation of liberty without due process, Justice must prove a violation of either the procedural or "substantive" rights [5] directly secured by the fourteenth amendment. Either, on current doctrine, would present very difficult problems of proof. The almost certain availability of an adequate state post-deprivation civil remedy (typically a personal injury tort action) [6] would defeat a procedural due process claim, even if a deprivation of liberty by excessive force were provable. *See Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1975). Proof of a "substan-

tive due process" violation, though not precluded by the availability of state post-deprivation remedies, would require evidence of a degree of harm and culpability on the defendant's part sufficiently high that it would be very difficult to establish,[7] even though an objectively excessive use of force were provable.

On the other hand, if Justice's claim was one properly invoking the fourth amendment right to be "secure in [his] person [ ] ... against unreasonable seizure [ ] ...," it was much more easily established. Justice need only prove that under the particular circumstances, the force used in subduing him exceeded that which reasonably could have been considered necessary to take and maintain him in lawful custody. *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *Kidd v. O'Neil*, 774 F.2d 1252, 1256 (4th Cir.1985); *Lester v. City of Chicago*, 830 F.2d 706, 711–712 (7th Cir.1987); *Gilmere v. City of Atlanta*, 774 F.2d 1495, 1502 (11th Cir.1985) (en banc). Critically, the assessment of reasonableness, hence of excessiveness, under a fourth amendment § 1983 claim is wholly objective;[8] the fourth amendment's protection is against "unreasonable" seizures, without regard to any specific degree of injury or to the state actor's specific intent,

---

**5.** While questions continue to be raised about the existence of any "substantive" component in the due process clauses, *see, e.g., Gumz v. Morrissette*, 772 F.2d 1395, 1405–06 (7th Cir.1985) (Easterbrook, J., concurring), the Supreme Court plainly continues to recognize that there is, and that it stands as an ultimate barrier against sufficiently abusive exercises of state authority which cause bodily harm. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986) (substantive due process recognized as congruent source of constitutional protection for convicted prisoners); *see also Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986) ("Due Process Clause ... bar[s] certain government actions regardless of the fairness of the procedures used to implement them.").

**6.** This assumes that the existence of a state sovereign immunity defense would not make such a tort remedy constitutionally inadequate, a point not yet decided by the Supreme Court, *see Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 666 n. 1, 88 L.Ed.2d 662 (1986).

**7.** While the exact nature of the "substantive due process" that protects bodily integrity has not ever been defined with precision by the Supreme Court, the Court has now apparently endorsed the formulation derived from *Rochin v. California*, 342 U.S. 165, 172, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952), which embodies as its central element the requirement that the challenged conduct "shocks the conscience," *see Whitley*, 106 S.Ct. at 1088; *cf. Gumz v. Morrissette*, 772 F.2d at 1406 (Easterbrook, J., concurring) (propriety of submitting "shocks the conscience" issue to triers-of-fact questioned); *Kidd v. O'Neil*, 774 F.2d 1252, 1260–61 n. 14 (4th Cir.1985) (suggesting that in adjudicating substantive due process claims of excessive force, objective excessiveness should be treated as issue of fact; further issue whether *so* excessive as to be "shocking to the conscience," as question of constitutional law for court).

**8.** Section 1983 "contains no state-of-mind requirement independent of that necessary to state a violation of the underlying constitutional right," *Daniels v. Williams*, 106 S.Ct. at 664.

purpose, or motive.[9] *Scott v. United States,* 436 U.S. 128, 137–38, 98 S.Ct. 1717, 1723–24, 56 L.Ed.2d 168 (1978); *Kidd,* 774 F.2d at 1255–56; *Lester v. City of Chicago,* at 712; *but see Jamieson v. Shaw,* 772 F.2d 1205, 1210–11 (5th Cir.1985) (suggesting that culpable motive is essential to proof of excessive force claim under fourth amendment).

To the contrary, proof of a violation of procedural due process requires proof of at least grossly negligent conduct, *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. at 664–67 (procedura¹ due process claim by convicted inmate in connection with personal injury received in prison), while proof of a substantive due process violation requires proof of an even higher degree of culpability involving malice or wantonness, *see Whitley v. Albers,* 106 S.Ct. at 1088 (equating substantive due process and cruel and unusual standards in considering convicted inmate's personal injury claim).

## II

Whether Justice's claim here is properly considered one for violation of fourth amendment or substantive due process rights is therefore dispositive of the question whether the challenged instruction was erroneous. The record and the authorities clearly demonstrate that the claim as pleaded, tried, and submitted to the jury was one properly invoking fourth amendment rights. The instruction was therefore erroneous, and its resulting prejudice obvious.

The specific legal claim alleged in Justice's complaint was that Dennis's assault had "depriv[ed] Plaintiff of his liberty without due process of law in violation of the Fourteenth Amendment ... and ... § 1983." No other specific source of constitutional right was identified in the pleading.[10]

The complaint then identified the specific bodily injury on which the § 1983 claim was based as that inflicted by Dennis "as he [Justice] was leaving the Magistrate's office," that is, immediately after probable cause had been found and bail set. The evidence at trial then indisputably established that this event happened while Justice was still in the custody of the arresting officer, Dennis, and before routine booking and inventorying processes incident to transfer of his custody to local jail officials had occurred.

The record does not indicate that the question of the specific constitutional right being invoked was ever directly addressed by the parties or the district court before the case was submitted to the jury. So far as appears, no consideration was ever given to the possibility that a procedural due process claim might be in the case. Neither was "substantive due process" directly suggested as the source of claimed right. Rather, every indication is that throughout the trial both parties and the court considered and acted on the understanding that the claim was one asserting the use of excessive force incident to an arrest, hence quintessentially one invoking fourth amendment protections.

Thus, Justice requested the following instruction, perfectly compatible with the fourth amendment right that was soon to

---

**9.** As the Seventh Circuit has recently pointed out, though the fourth amendment standard does not contain any requirement of a culpable state of mind nor any threshold degree of severity of injury, this does not mean that "every push and shove an officer makes during an arrest will subject the officer to 1983 liability." *Lester v. City of Chicago,* at 712. This is so because even an objective inquiry into "reasonableness under all the circumstances" must take into account in the officer's behalf exigencies that may justify particular degrees of injury and explain the temporary suspension of cold rationality in assessing need. *Gumz v. Morrissette,* 772 F.2d at 1406 (Easterbrook, J., concurring) (under the reasonableness standard, "the

more exigent the circumstances, the more police can do").

**10.** To the extent the nature of the claim is technically constrained by this pleading, the complaint clearly comprehends, as notice pleading, a fourth amendment claim. "[T]he Due Process Clause of the Fourteenth Amendment ... is the source of three different kinds of constitutional protection. First, it incorporates specific protections defined in the Bill of Rights ... [including] the guarantees in the Fourth ... Amendment[ ]." *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 677, 677–78, 88 L.Ed.2d 677 (Stevens, J., concurring).

be expressly confirmed in *Tennessee v. Garner:*

> The Plaintiff Gary Wayne Justice claims that excessive force was used by Defendant Dennis in connection with his arrest. A person, even if he is being lawfully arrested, has a constitutional right to be free of excessive force. An officer is entitled to use such force as a reasonable person would think is required to take one into custody, and this may include such physical force as is reasonably necessary to subdue a person who is struggling with an officer. However, an officer is not allowed to use any force beyond that reasonably necessary to accomplish his lawful purpose. Thus if you find that Defendant used greater force than was reasonably necessary in the circumstances of this case, you must find that the Defendant is liable for a violation of the Plaintiff's constitutional rights.

The district court declined to give this instruction and instead gave the expansive one extensively discussed in both the superseded panel opinion and the en banc majority opinion. As there indicated, in critical part that instruction required Justice to prove that Dennis's use of force was "malicious," "sadistic," "inhumane," "shocking to the conscience," etc. This is obviously the "substantive due process" standard derived ultimately from Judge Friendly's influential formulation in the pretrial detainee case, *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973), and recognized by this court as relevant in assessing a comparable substantive due process claim of "excessive paddling" by a public school student in *Hall v. Tawney,* 621 F.2d 607, 613 (4th Cir.1980). But in other parts of its extended instructions, the district court posited a much less stringent standard of simple objective unreasonableness, which it actually identified as being appropriate to a claim of excessive force in effecting and maintaining an arrest. Thus, for example, the court quite properly instructed that

> [E]very citizen has the constitutional right not to be subjected to unreasonable force upon his person while being arrested by a law enforcement officer, even though such arrest is otherwise made in accordance with due process of law.
>
> On the other hand, in making a lawful arrest, an officer has the right to use such force as is necessary under the circumstances to effect the arrest. Not every use of force by a law enforcement officer amounts to a deprivation of rights, privileges or immunities secured or protected by the Constitution or laws of the United States.
>
> Whether or not the force used in making an arrest was unnecessary, unreasonable or violent is an issue to be determined in the light of all of the surrounding circumstances, on the basis of that degree of force a reasonable and prudent officer would have applied in effecting the arrest under the circumstances disclosed in this case.
>
> . . . . .
>
> The mere fact that the evidence in the case may establish some physical contact between the defendant and the plaintiff during the course of the arrest and processing which resulted in personal injury to the plaintiff is not proof that the defendant acted beyond his lawful authority under state law.
>
> . . . . .
>
> The reasonableness or excessiveness of the force used to effect an arrest must be considered in light of the circumstances as they appeared to the officer at the time.
>
> . . . . .
>
> If the person being processed resists, obstructs or delays the processing, a highway patrolman may use sufficient force to overcome the resister.
>
> If the resister attempts to inflict serious bodily injury on the trooper the trooper may resort to extreme measures to avoid serious injury and to accomplish the arrest and to prevent the escape.

It is therefore clear that the case was submitted to the jury as one specifically implicating fourth amendment protections incident to the ongoing process of "arrest." Significantly, neither party objected to the

district court's obvious assumption, as expressed in the instruction, that this was so. The only specific objection registered was Justice's objection to the court's instruction that to prove excessive force in this context, Justice must prove that it was "malicious," "sadistic," "shocking to the conscience," etc., that is, a use of force meeting the "substantive due process" standard.

From all this, it is plain that if, as the district court obviously assumed, Justice's claim was properly to be treated as one invoking fourth amendment rights incident to arrest, that portion of the court's instruction which imported the substantive due process standard was prejudicially erroneous. That assumption was only questioned by the defendant for the first time on this appeal.[11] *Tennessee v. Garner*, confirming the objective reasonableness test as controlling in fourth amendment claims, was decided by the Supreme Court while this appeal was pending. Confronted with that decision, Dennis has predictably now sought to avoid its force by asserting that Justice's claim should not be considered one under the fourth amendment, but as one invoking only substantive due process rights, so that the instruction was correct. Specifically, the contention is apparently that because Justice's arrest had been completed when the challenged conduct occurred, he was then a pretrial detainee entitled only to the substantive protections of his liberty interest directly provided by the due process clause.

As earlier indicated, the en banc majority opinion has now simply accepted that contention as the threshold premise for its decision approving the substantive due process instruction. With all respect, this is simply wrong as a general proposition and as particularly applied here.

Though the contention is not elaborated by Dennis, nor discussed by the majority, it presumably rests on two interrelated notions. First, that all fourth amendment rights cease once an arrested person has become a "pretrial detainee." Second, that in any event the specific protection against unreasonable seizure of the person is narrowly confined to the act of arrest, and that this act is completed when probable cause to detain for trial has been judicially found.

The first notion is flatly wrong. Without regard to when one technically becomes a pretrial detainee, it is settled that he does not thereby lose all his fourth amendment rights. to be secure in his person against unreasonable searches and seizures, notwithstanding that he may also then be entitled to the concurrent protections afforded by the due process clause to his congruent liberty interest in bodily security. *See Winston v. Lee*, 470 U.S. 753, 755, 105 S.Ct. 1611, 1614, 84 L.Ed.2d 662 (1985) (subjecting state pretrial detainee to forced surgical procedure would violate his "right to be secure in his person guaranteed by the Fourth Amendment").

The second notion, that seizure of the person relates only to the event of "arrest," and that arrest ends when probable cause is found, is equally wrong—in both its aspects.

Most critically, and sufficient to dispose of the matter, *Terry v. Ohio*, 392 U.S. 1, 88

---

**11.** It is obvious that considerable uncertainty about the exact source of constitutional protection existed on all fronts in the district court. Justice was certainly no exception. In his motion for judgment n.o.v., he claimed the protection of the eighth amendment in addition to that of the fourteenth amendment's due process clause as originally pleaded. J.A. 377. The eighth amendment is, of course, not implicated in a pre-conviction setting. *See Ingraham v. Wright*, 430 U.S. at 664–71, 97 S.Ct. at 1408–12.

Given the tortured evolution of doctrine in this realm, the general confusion is understandable and obviously should not prevent this court's assessment of the claim in its most ap-

propriate constitutional dimension. *See Lester v. City of Chicago*, 830 F.2d 706 (7th Cir.1987), in which the Seventh Circuit, partially overruling its quite recent earlier decision in *Gumz v. Morrissette*, 772 F.2d 1395 (7th Cir.1985), has now held, in an obvious attempt to reduce confusion, that "Fourth Amendment standards govern all excessive force in arrest claims," without regard, presumably, to how a claimant chooses to label the claim. *Id.* at 713. There is no question that Justice has now properly presented the fourth amendment issue to this court on his appeal. *See* Appellant's Reply Brief 7–8 (relying upon intervening decisions in *Garner* and *Kidd*).

S.Ct. 1868, 20 L.Ed.2d 889 (1967), has long since settled that a "seizure" of the person within the fourth amendment's meaning is not limited to conduct that constitutes a "technical arrest," and instead encompasses any conduct that "by means of physical force ... has in some way restrained the liberty of a citizen," *Id.* at 19 & n. 16, 88 S.Ct. at 1879 & n. 16. It would be a strange doctrinal twist indeed that treated as "seizures" the limited intrusions, without any use of physical force, that are routinely now considered *"Terry* stops," but did not treat as a "seizure" the direct use of physical force in subduing a person in custody just because his "arrest" had already been effected. I am satisfied that it is a twist not present in controlling fourth amendment doctrine. Rather, it seems obvious to me that within *Terry*'s analysis any application of physical force to a citizen which has the effect of disabling him physically to any extent is a "restraint on his liberty," leaving only the question of its reasonableness.

Furthermore, if somehow it were necessary to find that a use of force occurred during an "arrest" in order to consider it a "seizure," I would have no difficulty in doing so here. Even a "technical arrest" must be considered to have a duration past the initial point at which it could be said "this person is effectively in custody." Indeed the law, accommodating the realities, has at times employed the notion of "rearrest" to cover the situation where an arresting officer has to forcibly subdue a person already arrested to keep him in custody. *See, e.g., Gross v. State,* 186 Ind. 581, 117 N.E. 562 (1917). And, nearer the constitutional question, the Supreme Court has implicitly recognized that in the course of a police-citizen encounter, there may be a succession of "seizures." *See Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977); *see*

*also id.* at 116 n. 2, 98 S.Ct. at 336 n. 2 (Stevens, J., dissenting). On this practical view of the matter, an "arrest," if it be important to give it a duration, lasts as long as the arresting officer retains custody of the person arrested, so that fourth amendment protections against unreasonable uses of force clearly apply throughout that period. *Robins v. Harum,* 773 F.2d 1004, 1010 (9th Cir.1985); *see also Lester v. City of Chicago,* at 713 n. 7.

In our case, as indicated, the arresting officer still had Justice in his custody when the challenged force was applied by that officer.[12] Therefore, though I think it not necessary to find that "arrest" continued at this point in order to consider that the use of force was a "seizure," this supplies an alternative basis for holding that fourth amendment protections applied.

### III

For these reasons, Justice was entitled to an unadorned objective reasonableness instruction appropriate to his fourth amendment claim. Having properly requested such an instruction and objected to the district court's patently erroneous instruction imposing a substantive due process standard, he is entitled to a new trial under proper instructions.

I therefore dissent.

I am authorized to say that Chief Judge WINTER and Judge ERVIN join in this opinion.

---

**12.** The intervention of the magistrate's probable cause determination before this event does not, on this view, affect the continuance of fourth amendment protections against unreasonable "seizures." That judicial act does mark the end of the fourth amendment's specific protection against unreasonably prolonged detentions by arresting officers on no more than their own probable cause determinations, *see Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54 (1975), but, as *Bell v. Wolfish,* 441 U.S. 520, 545–46, 99 S.Ct. 1861, 1877–78, 60 L.Ed.2d 447 (1979), has plainly held, it does not mark the end of all fourth amendment protections.