**Edward Paul ZUMBROEGEL, Plaintiff,**

v.

**CITY OF DEARBORN HEIGHTS, a Municipal Corporation, and City of Dearborn Heights Police Officer, Jeff Sapienko, Individually and in his Official Capacity, Jointly and Severally, Defendants.**

No. 88–1281.

United States District Court,
E.D. Michigan, S.D.

Feb. 2, 1989.

Peter Lyons, Swanson and Torgow, Detroit, Mich., for plaintiff.

Edward Salah, Cummings McClorey Davis & Acho, Livonia, Mich., for defendants.

## MEMORANDUM OPINION

RALPH M. FREEMAN, District Judge.

Plaintiff brought this suit under 42 U.S.C. § 1983 against the City of Dearborn Heights and City of Dearborn Heights Police Officer Jeff Sapienko.[1] Plaintiff's section 1983 claim arises out of an incident in which Officer Sapienko arrested plaintiff for driving under the influence of alcohol. In sum, plaintiff alleges that he was verbally and physically abused by the officer during the course of his arrest, in violation of his fourteenth amendment due process rights. Plaintiff's complaint against the City of Dearborn Heights under section 1983 is that the City allegedly had certain policies that led to the deprivation of his due process rights. Before the court is a summary judgment motion filed on behalf of both defendants. For the reasons stated below, the court grants defendant City of Dearborn Heights' motion for summary judgment and denies defendant Sapienko's motion for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact; rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. F.R. Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty*

---

1. Plaintiff filed suit in state court in March 1988 and defendants removed the case to this court. Plaintiff's complaint asserts no state law causes of action.

*Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511 (citations omitted); *see Catrett,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## II. STATEMENT OF FACTS

On April 17, 1987, at approximately 12:02 p.m., Officer Sapienko stopped plaintiff's car for failing to stop his car at a stop sign located near the intersection of Dartmouth and Monroe in the City of Dearborn Heights. The officer's version of the events after he stopped the plaintiff is as follows:

> Plaintiff, Edward Zumbroegel, exited his motor vehicle and was informed by the Defendant of the traffic violation. When Plaintiff was asked if he had been drinking, Plaintiff responded that he had been. Following the Field Sobriety Tests, Plaintiff was advised that he was under arrest for O.U.I.L. While Defendant was attempting to handcuff the Plaintiff, Plaintiff tried to avoid the application of the handcuffs, and resisted arrest.

Defendants' Summary Judgment Motion at 4; *see* Sapienko Affidavit. Plaintiff, on the other hand, presents a different version of the events:

> Mr. Zumbroegel existed [sic] his vehicle and approached the officer whereupon the officer inquired whether Mr. Zumbroegel believed in stopping at stop signs. Mr. Zumbroegel responded by indicating that he did not realize that he had rolled through the stop sign. Officer Sapienko then inquired whether Mr. Zumbroegel had been drinking and Mr. Zumbroegel admitted that he had. The officer then administered a field sobriety test and then instructed Mr. Zumbroegel to get into the police car. Mr. Zumbroegel ask [sic] Officer Sapienko if he could get his keys, whereupon Officer Sapienko [swore] and grabbed Mr. Zumbroegel and forced his torso and his face into the police car. Mr. Zumbroegel was then handcuffed and, *after being handcuffed* and as he was being placed into the police car he was struck in the face by Officer Sapienko. During the transport to the police station Mr. Zumbroegel complained that the handcuffs had been applied to [sic] tightly but was refused any relief.

Plaintiff's Response Brief; Complaint at paragraphs 9–17.

## III. SECTION 1983 CLAIM AGAINST CITY OF DEARBORN HEIGHTS

■] Plaintiff's Complaint against the City of Dearborn Heights alleges that the City had express or implied policies and methods of arrest and detention that permitted officers to use excessive force; that the City acquiesced in the use of excessive force by its police officers; that the City failed to test properly its police officers' ability to comprehend and follow through with City policies with respect to effectuating arrests; and that the City failed to properly train its officers in the proper methods of effectuating arrests. *See* Complaint at paragraph 20(a)—(d).

Defendant City argues that there is no evidence that it had any unconstitutional policy of allowing its police officers to use excessive force. The City has presented the Affidavit of Deputy Chief Sam DiPrima in which he states that the City does not allow its police officers to use excessive force. The affidavit states that "it is the policy of the Dearborn Heights Police Department to allow officers to use force only to the extent necessary to effectuate an

arrest." Further, the affidavit states that "it is a violation of Dearborn Heights Police policy for a police officer of the Dearborn Heights Police Department to use excessive force during the course of an arrest." In addition, the affidavit indicates that the City does not tolerate the use of excessive force by its police officers and that the City would discipline any officer using excessive force.

Plaintiff's response to the motion is superficial. Plaintiff argues that the *defendant* has not shown "what the policies of the City of Dearborn Heights were with respect to the level of permissible force necessary to effectuate a traffic stop." In a convoluted argument, plaintiff contends that the City's Answers to Interrogatories cannot be reconciled with the Affidavit of Deputy Chief DiPrima. The court will not attempt to rephrase the argument. Basically, plaintiff argues that "a threshold question of fact is created for the trier of fact as to what the City's policy is in the first instance," thus precluding a grant of summary judgment.

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Under section 1983, a governmental entity cannot be held vicariously liable for the unconstitutional acts of its employees, but it can be held liable under section 1983 for constitutional violations that occur as a result of an official policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). The plaintiff must show that an official policy or custom that is "fairly attributable" to the governmental body caused the specific constitutional violation.

*See Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir.1987), *cert. denied sub nom. City of Fayetteville v. Spell*, —— U.S. ——, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). The governmental body must be a "moving force" behind the constitutional violation, *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037, and an affirmative link must exist between the policy or custom and the alleged constitutional violation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). Official policy involves a "deliberate choice to follow a [particular] course of action ... made from among various alternatives" by an official who has the final authority to establish governmental policy." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986); *see Molton v. City of Cleveland*, 839 F.2d 240 (6th Cir.1988) (petition for certiorari filed July 11, 1988).

Only decisions made by officials with "final policymaking authority" are attributable to a governmental entity. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Whether a particular official has policymaking authority is determined by the court by reference to state law. *Id.* 108 S.Ct. at 924–26. For the governmental body to be held liable under section 1983, the alleged unconstitutional action "must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area...." *Id.* at 924.

To prevail in this case, plaintiff must establish (1) deliberate and discernible municipal policies or customs (a) to allow police officers to use, or for the City to acquiesce in the use of, excessive force in effectuating arrests; (b) to fail to test police officers' abilities to follow procedures with respect to the proper methods of arrest; or (c) to train inadequately officers in the proper methods of arrest without the use of excessive force, and (2) that the City's policies or customs were the "moving forces" behind plaintiff's alleged injuries. *See Beddingfield v. City of Pulaski*,

861 F.2d 968, 971 (6th Cir.1988).[2]

After reviewing the City's motion and the attached affidavits, the court finds that the City has discharged its burden of showing this court that there is an absence of any genuine issue as to any unconstitutional City policy or custom. The Affidavits of Deputy Chief DiPrima and Officer Sapienko indicate that the City trains its officers to use reasonable force only to the extent necessary to effect an arrest, which is consistent with both the training Officer Sapienko received at the Detroit Police Academy and the guidelines of the Michigan Law Enforcement Officers Training Counsel. Officer Sapienko's Affidavit states that he was taught that police officers may use reasonable force to effect an arrest and that the force used to arrest plaintiff was reasonable and necessary.

The court also finds that the plaintiff has failed to sustain its burden of providing specific facts that show a genuine triable issue. The plaintiff cannot merely point to his allegations in the complaint. *Gregg*, 801 F.2d at 861. The plaintiff fails to present *any* evidence of any unconstitutional policy or custom of the City of Dearborn Heights. The mere fact that a question of fact exists as to whether excessive force was used by Officer Sapienko in this case does not mean that a question of fact exists as to the alleged City policy of encouraging or permitting excessive force to be used by police officers in making arrests. *See Pembaur*, 475 U.S. at 478–83, 106 S.Ct. at 1297–1300; *Tuttle*, 471 U.S. at 820–24, 105 S.Ct. at 2434–37. Moreover, merely citing propositions of law does not create a genuine issue of material fact. The court does not disagree with the propositions of law stated in *Fundiller v. Cooper City*, 777 F.2d 1436 (11th Cir.1985) (case involving allegations of City custom of use of excessive force in making arrests, of failure to train police officers, and of failure to investigate background of officers before hiring them) and *Rymer v. Davis*, 775 F.2d 756 (6th Cir.1985) (case involving allegations of use of excessive force during an arrest and of failure to train properly police force), *cert. denied*, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987), which plaintiff cited in his response brief to the defendant's initial motion for summary judgment.[3] Plaintiff, however, has failed to produce *any* evidence that would take him within those cases and entitle him to present his case to a jury. Discovery has been cut off, and there is no evidence as to the City's policies, customs, training, or testing other than conclusory allegations in plaintiff's Complaint. Accordingly, the court GRANTS defendant City of Dearborn Heights' motion for summary judgment.

### IV. SECTION 1983 CLAIM AGAINST OFFICER SAPIENKO

Officer Sapienko argues that he is entitled to summary judgment because he acted in good faith in effecting the arrest of plaintiff, entitling him to qualified immunity. Defendant refers to his Affidavit in which he states that he used only that force reasonably necessary to effect the arrest of plaintiff and that he acted in good faith and believed the force he used was reasonably necessary.

Plaintiff argues that defendant is not entitled to qualified immunity because his deposition testimony[4] establishes that Offi-

---

**2.** The court assumes that there is no dispute that the officer was acting under color of state law, which is one element of a section 1983 claim. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980). The other element that plaintiff must establish is that the defendant deprived him of a federal right. In this case, plaintiff alleges only a deprivation of a fourteenth amendment right to due process, which the court addresses *infra* in the context of Officer Sapienko's motion for summary judgment.

**3.** Defendant City filed a motion for partial summary judgment on June 22, 1988. After oral argument on September 21, 1988, the court ruled from the bench and denied the motion, without prejudice, because the parties had not properly addressed the issues.

**4.** Defendant argues that the plaintiff's deposition is not properly before the court because it has not been filed with the court pursuant to the Local Rules of the United States District Court for the Eastern District of Michigan. Local Rule 16(g)(1), promulgated because of storage problems, states in part that a deposition shall

cer Sapienko did use excessive force during the arrest. Plaintiff alleges that the officer slammed him against the police car to handcuff him and, after he was handcuffed, the officer struck him in the face. Plaintiff argues that these circumstances preclude any claim of good faith or qualified immunity.

The court will deny defendant Sapienko's motion for summary judgment on the basis of qualified immunity. Whether defendant is entitled to a defense of qualified or good faith immunity is a question of law for the trial court. *Holt v. Artis*, 843 F.2d 242, 245–46 (6th Cir.1988); *Donta v. Hooper*, 774 F.2d 716, 719 (6th Cir.1985), *cert. denied*, —— U.S. ——, 107 S.Ct. 3261, 97 L.Ed.2d 760 (1987). Good faith is measured by objective standards. *Holt*, at 245. In this case, plaintiff alleges that the officer slammed him against a car, handcuffed him too tightly, and struck him in the face after he had been handcuffed and as he was being placed in the car. If the allegations are true, and if the officer used more force than was reasonably necessary under the circumstances, then the officer is liable for plaintiff's injuries. What the officer believed is not at issue, and he "cannot have acted in good faith." *Holt*, at 246; *see Dominque v. Telb*, 831 F.2d 673, 677 (6th Cir.1987) ("Once the issue of qualified immunity is properly injected in the case ..., the plaintiff is obliged to present facts which if true would constitute a violation of clearly established law."). Since the right to be free from the use of excessive force is clearly established, *Gilmere v. City of Atlanta*, 774 F.2d 1495 (11th Cir.1985) (en banc), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Jenkins v. Averett*, 424 F.2d 1228, 1232 (4th Cir.1970), and since the plaintiff has presented facts which if true would constitute a violation of that right, the defendant is not entitled to the defense of good faith or qualified immunity.

In the alternative, defendant Sapienko argues that he is entitled to summary judg-

ment because his conduct, as alleged by the plaintiff, does not "shock the conscience" and violate substantive due process. For the following reasons, the court rejects this argument.

At oral argument the court inquired of plaintiff upon what constitutional provision or provisions he relies for his section 1983 claim. The court believes that it is necessary to define the scope of the claims as early in the stages of the case as possible. In prior section 1983 cases before this court, the parties have not defined precisely upon what federal right—either statutory or constitutional—they rely. This lack of clarity can create problems for the court in properly ruling on pretrial motions as well as in preparing a proper jury charge. The vague nature of the claim also creates confusion on appeal. *See, e.g., Justice v. Dennis*, 834 F.2d 380, 385 & n. 10 (4th Cir.1987) (en banc) (appeal pending); *Graham v. City of Charlotte*, 827 F.2d 945, 948–49 (4th Cir.1987), *cert. granted sub nom. Graham v. Connor*, —— U.S. ——, 109 S.Ct. 54, 102 L.Ed.2d 32 (1988); *Gumz v. Morrissette*, 772 F.2d 1395 (7th Cir.1985), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1644, 90 L.Ed.2d 189 (1986).

For example, parties frequently refer, as the plaintiff did at oral argument, to the fourteenth amendment due process clause. Without more, that reference offers little guidance to the court and the opposing party. The fourteenth amendment due process clause contains *three* different kinds of constitutional protections. *Daniels v. Williams*, 474 U.S. 327, 337, 106 S.Ct. 662, 677–78, 88 L.Ed.2d 662 (1986) (Stevens, J., concurring).

> First, it incorporates specific protections defined in the Bill of Rights. Thus, ... the State must respect the guarantees in the Fourth, Fifth, and Sixth Amendments. Second, it contains a substantive component, sometimes referred to as 'substantive due process,' which bars certain arbitrary governmental actions 're-

---

not be filed except: "(A) when the deposition provides factual support for a motion, in which case it shall be filed when the motion is filed; ...." Defendant's argument is without merit.

Plaintiff did not strictly fail to comply with the rule, for he did not file "the motion;" he only filed a response to the motion in which he invokes plaintiff's deposition testimony.

gardless of the fairness of the procedures used to implement them.' [Third, it guarantees procedural due process]. *Id.* at 337, 106 S.Ct. at 677–78 (citations omitted). This case involves allegations of excessive force incident to an arrest. Accordingly, plaintiff's invocation of the fourteenth amendment could include a fourth amendment claim involving his "right . . . to be secure in [his] person[ ] . . . against unreasonable seizure[ ]" (as incorporated by the fourteenth amendment), a claim involving his substantive due process right to be free from excessive force, or both.[5] *See Justice,* 834 F.2d at 385 (Phillips, J., dissenting).

Some courts, however, hold that a plaintiff cannot proceed under a fourteenth amendment substantive due process claim. *See, e.g., Lester v. City of Chicago,* 830 F.2d 706, 713 & n. 7 (7th Cir.1987) ("[W]e are dealing with a claim of excessive force *in arrest.* We hold only that Fourth Amendment standards govern excessive force in arrest claims because the Fourth Amendment is specifically directed to those claims.") (emphasis in original); *see Kidd v. O'Neil,* 774 F.2d 1252 (4th Cir.1985); *Jenkins v. Averett,* 424 F.2d 1228 (4th Cir. 1970); *cf. Justice,* 834 F.2d at 382–83. While the defendant assumes in his summary judgment motion that the plaintiff asserts a substantive due process claim, the court is not certain that the assumption is correct. The plaintiff only mentions the fourteenth amendment without any further clarification. *See Justice,* 834 F.2d at 385 & n. 10 (Phillips, J., dissenting) (complaint invoking fourteenth amendment is notice pleading invoking fourth amendment by incorporation through fourteenth). Consequently, the court will address the nature of a fourth amendment claim, a substantive due process claim, and then address the defendant's arguments as to a substantive due process claim.

A person invoking the fourth amendment right to be "secure in [his] person[ ] . . . against unreasonable seizure[ ]" must only prove that under the circumstances the force used exceeded that which reasonably could have been considered necessary to place him in lawful custody. *See Tennessee v. Garner,* 471 U.S. 1, 8, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985); *Justice,* 834 F.2d at 384 (en banc) (Phillips, J., dissenting); *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir.1987); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1502 (11th Cir.1985) (en banc), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Wilson v. Beebe,* 770 F.2d 578, 586 (6th Cir.1985) (en banc). In other words, a police officer's seizure during the course of an arrest is not unconstitutional unless it is "unreasonable." To determine reasonableness, the finder of fact must balance "the nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Garner,* 471 U.S. at 8, 105 S.Ct. at 1699 (quoting *United States v. Place,* 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983)). The assessment of reasonableness or excessiveness is an objective one based upon the totality of circumstances known to the officer at the time of the incident. The plain-

---

**5.** The United States Court of Appeals for the Sixth Circuit, in which circuit this court sits, appears to indicate that both claims could not be invoked. In *Wilson v. Beebe,* 770 F.2d 578, 583 (6th Cir.1985) (en banc) (emphasis added), the court stated:

[D]ue process claims for injuries inflicted under color of state law may proceed either upon the theory that a deprivation has occurred without procedural due process *or* that there has been a substantive due process violation; that is, either the official conduct shocks the conscience, as in *Rochin*[, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952) ], *or* infringes a specific constitutional guarantee, [i.e., the fourth amendment]. . . .

*Cf. New v. City of Minneapolis,* 792 F.2d 724, 726 (8th Cir.1986) ("If sufficiently egregious, a deliberate use of excessive force [by police in effecting an arrest] can implicate the substantive fourth amendment guarantee against unreasonable seizures, the substantive due process right to be free from abusive governmental conduct 'offensive to human dignity,' or both."); *Gilmere v. City of Atlanta,* 774 F.2d 1495, 1501–02 (11th Cir.1985) (en banc) (discussing both fourth and fourteenth amendments).

Moreover, if the plaintiff can succeed on a fourth amendment claim of excessive force incident to an arrest, the arguably higher standard necessary for a substantive due process claim would be superfluous.

tiff only need prove that the force used in subduing him exceeded that which reasonably could have been considered necessary to take him in custody. *Id.; Kidd v. O'Neil*, 774 F.2d 1252, 1256 (4th Cir.1985).

On the other hand, the boundaries of a substantive due process claim are nebulous. *See, e.g., Hall v. Tawney*, 621 F.2d 607, 613 & n. 7 (4th Cir.1980) (citing cases). The due process clause has been used as a constraint on the government's ability to use force. In the oft cited case of *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), the United States Supreme Court stated that substantive due process is violated when the government engages in actions that "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Id.* at 169, 72 S.Ct. at 208 (citation omitted). In *Rochin*, the police had forced an emetic into a suspect's stomach to retrieve evidence for a narcotics case. The court held that this conduct violated the suspect's substantive due process rights and "shocked *the* conscience." [6]

Courts have used several factors for determining whether the government has exceeded the substantive limitations on the use of force:

(1) the need for the application of the force; (2) the relationship between the need and the amount of force used; (3) the extent of injury inflicted; and (4) whether the force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.[7]

*Fundiller v. Cooper City*, 777 F.2d 1436, 1440 (11th Cir.1985) (citing *Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), *cert. denied*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)); *see Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981); *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir.1981); *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980). Consequently, the use of non-lethal force in effecting an arrest can, under certain circumstances, violate the substantive due process rights of an individual. *See Gilmere*, 774 F.2d at 1501 (two police officers liable for beating individual with little provocation and blows delivered out of irritation at individual's initial resistance).

Looking to the above factors, Officer Sapienko argues that he is entitled to summary judgment because the plaintiff did not suffer *severe* injuries, the force used was not grossly disproportionate to the need under the circumstances, and, rather than inspired out of malice, the force used was in a good faith effort to restrain the plaintiff. The court cannot agree.

First, in *Molton v. City of Cleveland*, 839 F.2d 240, 249 (6th Cir.1988), the Sixth Circuit ruled that a serious or permanent injury is not a prerequisite to a section 1983 claim. While not clear, the case appears to have been tried as a fourteenth amendment substantive due process claim rather than as a fourth amendment claim, which arguably could have been asserted.[8]

---

**6.** The court queries as to whose conscience is shocked—the judge's, the community's conscience at large, or perhaps the individual juror's. *See, e.g., Gumz*, 772 F.2d at 1406–07 (Easterbrook, J., concurring) (judge criticizes use of fourteenth amendment substantive due process standard, as opposed to objective fourth amendment standard, in evaluating excessive force in arrest cases, stating "[s]ubstantive due process is shorthand for a judicial privilege to condemn things the judges do not like or cannot understand"); *see also Kidd*, 774 F.2d at 1260–61 & n. 14 (suggesting possible two stage proceeding: if trier of fact finds excessive force, court may be required to determine whether the conduct "shocks the conscience").

**7.** The court notes that to the extent the fourth factor involves a subjective inquiry, the factor is at odds with the objective standard involved in resolving claims of good faith or qualified immunity as well as the objective standard of reasonableness involved in resolving fourth amendment claims. In addition, some cases upon which defendant relies suggest that a severe injury is a prerequisite to a substantive due process violation under section 1983. *See, e.g., Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981).

**8.** The court draws the conclusion that the case was tried as a substantive due process claim because the district court relied upon *Shillingford v. Holmes*, 634 F.2d 263 (5th Cir.1981), which is a substantive due process case.

Second, construing the allegations in a light most favorable to the plaintiff, the court believes that slamming the plaintiff against the police car, putting handcuffs on him too tightly, and striking him in the face, if true, may rise to the level of a substantive due process violation. The acts may "be viewed as deliberate acts of punishment, rather than a reasonable means of restraining an arrestee." *Fundiller*, 777 F.2d at 1441. Since genuine issues of material fact exist as to what happened when plaintiff was arrested and whether the defendant's actions violated plaintiff's substantive due process rights (or "shocked the conscience"), the court will DENY Officer Sapienko's summary judgment motion on his alternative argument.

## V. CONCLUSION

The court GRANTS the City of Dearborn Heights' motion for summary judgment because there is no evidence of any unconstitutional City policy or custom.

The court DENIES Officer Sapienko's motion for summary judgment. Again, the court notes that the plaintiff has not clarified into which pool of constitutional protections he is attempting to wade—the clearer waters of the fourth amendment or the muddier waters of fourteenth amendment substantive due process. The defendant premised his motion upon substantive due process to which the plaintiff responded in kind. Consequently, the court only ruled upon the substantive due process claim.

The court realizes that litigation in this area is fraught with difficulty and seeming inconsistencies. For example, the Supreme Court recently granted certiorari in a case involving a claim of excessive force in arrest. *Graham v. City of Charlotte*, 827 F.2d 945 (4th Cir.1987), *cert. granted sub nom. Graham v. Connor*, — U.S. —, 109 S.Ct. 54, 102 L.Ed.2d 32 (1988). The question presented is as follows:

> Do *Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), *Tennessee v. Garner*, 471 U.S. 1 [105 S.Ct. 1694, 85 L.Ed.2d 1] 53 L W 4410 (1985), and *Whit-*

> *ley v. Albers*, 475 U.S. 312 [106 S.Ct. 1078, 89 L.Ed.2d 251] 54 L W 4236 (1986), require plaintiff who asserts claim under 42 USC 1983 for Fourth Amendment search and seizure of person arising from alleged use of excessive force to establish that police acted "maliciously and sadistically for the very purpose of causing harm"?

The court of appeals in that case discussed the reasonableness of the force used (a fourth amendment analysis) yet used the four factors typically used in a substantive due process analysis. *See Graham*, 827 F.2d at 948 (citing *King v. Blankenship*, 636 F.2d 70 (4th Cir.1980)). The Fourth Circuit apparently views the factors as merely relevant to whether there was an unreasonable seizure. The grafting of typical fourteenth amendment concerns, however, to a fourth amendment claim only adds confusion to an already confused area of the law. *See also Barnier v. Szentmiklosi*, 565 F.Supp. 869 (E.D.Mich.1983) (court only discusses substantive due process issues, for plaintiff never asserted such a claim), *aff'd in part, rev'd in part*, 810 F.2d 594 (6th Cir.1987) (court discusses conduct that does not "shock the conscience," which is a substantive due process analysis).

In light of this memorandum opinion, the court expects the joint final pretrial order, which will govern the course of the trial, to identify with clarity the claims and theories of the parties as well as the issues to be litigated. *See* Rule 40, Local Rules of the United States District Court for the Eastern District of Michigan (listing requirements).

Plaintiff shall submit an order consistent with this opinion and approved as to form by defendants.